## BATAVIA v. WALLACE.

(Circuit Court of Appeals, Eighth Circuit.   April 16, 1900.)

### No. 1,287.

1. FRAUDULENT CONVEYANCES—QUESTIONS FOR JURY—RIGHT TO INFER FRAUD.

   In the whole range of the law there is no class of cases in which a jury should be allowed greater latitude in forming an opinion based upon inference than in cases of fraudulent conveyances involving the question of fraudulent intent, and knowledge thereof on the part of another, and such cases should be submitted to the jury if there are any badges of fraud, or circumstances which are calculated to excite a suspicion in the mind of a reasonable person that the transaction was not entirely fair and honest.

2. SAME—PROOF OF KNOWLEDGE OF GRANTEE.

   Under the rule in Missouri that notice to a grantee of facts and circumstances sufficient to put him on inquiry as to the fraudulent intent with which the conveyance was made by his grantor is not equivalent to actual knowledge of such intent, which must be found as a fact when in issue, yet such notice will warrant an inference of knowledge unless it is shown that the inquiries suggested thereby were made, and proved unavailing.

3. SAME—TRUST DEED—EFFECT OF KNOWLEDGE OF TRUSTEE.

   It is the rule of law in Missouri that if a trustee in a deed of trust given to secure creditors is privy to, or has knowledge of, a fraudulent intent on the part of the grantor in executing the instrument, such knowledge will invalidate the instrument as to the beneficiaries, and generally he is the agent of his cestui que trust in all matters pertaining to the management and control of the trust property; and if he has any active duties to perform with respect thereto, and is not merely the repository of the title, having no previous connection with the property, whatever knowledge or notice impairs his legal title also impairs the equitable title of the beneficiaries.

4. SAME—ACTIONS—RIGHTS OF TRUSTEE.

   Where the trustee in a trust deed conveying personal property intervened in an attachment suit against his grantees, gave bond for the release of the property without assistance from the beneficiaries in the deed, and asserted his right to the property thereunder, his right to recover rests upon the validity of his title, and he cannot invoke the equities of any of the beneficiaries who are not parties to a suit.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Theodoric B. Wallace, as receiver of the Missouri National Bank of Kansas City, Mo., who is the present defendant in error, on January 5, 1897, brought an action against Morris Loewen and Louis Loewen, who were co-partners doing business under the name of Loewen Bros., to recover the sum of about $4,800, which was alleged to be due from said firm to the insolvent bank, of which Wallace was receiver, on certain notes theretofore executed by the firm of Loewen Bros. In aid of said suit he sued out a writ of attachment. This writ was levied upon a stock of hardware situated in a store Nos. 1209 and 1211 on Grand avenue, in Kansas City, Mo., which was claimed to be the property of Loewen Bros. On February 3, 1897, Eugene Batavia, the interpleader, and the present plaintiff in error, as trustee in a deed of trust which covered the stock of hardware, executed a forthcoming bond in favor of the United States marshal for the Western district of Missouri, by whom the writ of attachment had been levied, and by that means was enabled to regain possession of the attached property. At a later date he also filed an interplea in the aforesaid attachment suit, wherein he claimed to be the owner of the attached property under and by virtue of the aforesaid deed of trust which was executed by the firm of Loewen Bros. on January 4, 1897, in favor of said

Batavia, as trustee, to secure the payment of the following notes: Three notes, aggregating $7,000, which were executed by Loewen Bros. in favor of the National Bank of Commerce of Kansas City, Mo., all of which were dated December 3, 1896; one note in the sum of $1,500, which was executed by Loewen Bros. on March 14, 1894, in favor of Mrs. J. Rodecker, and was due one year after date; and one note in the sum of $2,500, which was executed by Loewen Bros. on December 22, 1896, in favor of C. A. Stavnow, and was due 60 days after date. Wallace, as receiver, replied to this interplea by alleging in substance that the deed of trust under which Batavia claimed as trustee was conceived in fraud, and was executed by Loewen Bros. with intent to hinder, delay, and defraud their creditors, and that such fraudulent intent was well known to Batavia, and to each and all of the beneficiaries named in said deed of trust who held the aforesaid notes that were secured thereby. On this issue there was a lengthy trial to a jury, which resulted in a verdict in favor of Wallace as receiver, and a judgment that the interpleader was not entitled to the property claimed. The case is brought to this court on a writ of error which was sued out by the interpleader.

Elijah Robinson (I. J. Ringolsky, on the brief), for plaintiff in error.

J. McD. Trimble (C. A. Braley and William Wallace, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is claimed in behalf of Batavia, the interpleader, that the trial court, at the conclusion of all the testimony, should have directed a verdict in his favor, as it was requested to do, upon the ground that there was no evidence tending to show that at the time he accepted the deed of trust in controversy and consented to serve as trustee therein he had any knowledge of the fraudulent purpose that had actuated the firm of Loewen Bros. by whom that instrument was executed. In the brief of counsel for the interpleader this is said to be the one question in the case "of highest importance" which demands "the most consideration." It is not claimed apparently, nor is there reasonable ground for the contention, that there was any want of testimony to establish a fraudulent intent on the part of Loewen Bros., the grantors in the deed of trust; but it is said that Batavia, the trustee, had no knowledge of the scheme to defraud, and was not a participant therein, and that there was no proof of facts or circumstances from which knowledge on his part could be inferred. We shall accordingly assume, in accordance with the finding of the jury, that the deed of trust was conceived by the makers thereof in bad faith, with a view of defrauding their creditors. The principal point to be determined, therefore, is whether there was substantial evidence that Batavia was cognizant of the fraud; or, to state the question in a different form, was there proof of any fact or circumstance from which knowledge on his part could be legitimately inferred by a jury? The attaching creditor claimed, and sued out a writ of attachment upon that theory, that the money obtained by Loewen Bros. on their notes in favor of the National Bank of Commerce of Kansas City, which were secured by the deed of trust, was obtained from that bank by the members of said firm for the purpose of concealing it, and withdrawing that much of their property from the

reach of their creditors. The attaching creditor also claimed that the other notes secured by the deed of trust, which were executed in favor of Mrs. J. Rodecker, who was a sister of the Loewens, and in favor of C. A. Stavnow, who was an intimate friend and associate of theirs, were not founded upon any consideration, but were fictitious and fraudulent obligations. The attorney who drew the deed of trust in controversy was related by marriage to the Loewens. Batavia, the trustee, occupied an office with this attorney, was very intimate with him, acted as his confidential assistant in many transactions, and seems to have been in a measure dependent upon him for employment. The deed of trust was drawn in this attorney's office, and Batavia was asked by one of the Loewens to become the trustee therein, and, upon such request being made, accepted the office without reading the instrument, and without consulting any of the beneficiaries for whose benefit it was made. When the deed of trust was executed, he also placed the same on record, as he says, without reading it fully, and took formal possession of the stock of merchandise thereby conveyed, without having had any prior conference with the beneficiaries in whose behalf he assumed to act. After the stock of merchandise was attached, the trustee requested one of the beneficiaries in the deed of trust, to wit, the National Bank of Commerce, to become his surety on a forthcoming bond to enable him to retain the possession of the attached property; but it declined to do so, whereupon the trustee, at his own expense, and of his own volition, procured a surety company to execute such a bond as his surety. On the day after he had thus regained possession of the attached property by giving a forthcoming bond to the marshal, a man by the name of Hoffman appeared on the scene without any previous correspondence with the trustee, and immediately purchased the attached property from the trustee for the sum of $8,000. This man Hoffman, who was a relative of one of the Loewens, resided in the state of Colorado, and was a wholesale or retail liquor dealer, who had no acquaintance with the hardware business. He came to Kansas City at the request of his relative, Louis Loewen, and, immediately after making the alleged purchase from the trustee, he returned to Colorado, leaving said Loewen to settle with the trustee for the unpaid portion of the purchase price, and at full liberty to deal with the purchased property and to dispose of it as he thought best. From that time forward the attached property was in the custody and control of Louis Loewen, who eventually disposed of the same at a considerable advance over and above the sum which was realized by the trustee. From the time the trustee accepted that office he does not appear to have conferred with any of the beneficiaries in the deed of trust with respect to the management of the mortgaged property, but appears rather to have acted in accordance with suggestions and advice which were from time to time received either from Loewen Bros. or from their attorney. These are, in substance, the material facts which the evidence discloses, and concerning which there is no substantial controversy.

It would be unreasonable to expect, in a case like the one now in hand, where a person is accused of having accepted a conveyance of

property with knowledge that the conveyance was made by the grantors therein with a fraudulent intent, that there would be found in the record any direct evidence of such knowledge. Persons who are concerned in or are privy to fraudulent transactions usually take the utmost pains to conceal their connection therewith, and to give them the appearance of being fair and honest. Hence, it is not to be expected in the present case that the knowledge which Batavia may have had of the fraudulent designs of Loewen Bros. will be disclosed otherwise than by inference from the circumstances of the case and the relations of the parties. And no fact or circumstance that is disclosed by the testimony can be regarded as insignificant or unimportant in determining what inference, as respects Batavia's knowledge of the fraud, might or ought to have been drawn by the jury. Every detail of the transaction is entitled to careful consideration which serves to give it tone or color. The trustee's intimate association with the persons by whom the fraudulent scheme was concocted; the fact that he occupied a position which afforded him ample opportunity to become acquainted with their designs; the fact that he was chosen by Loewen Bros. to execute the trust, and had no previous conference or acquaintance with the beneficiaries therein; the fact that he gave a forthcoming bond to obtain the release of the attached property after the principal beneficiary had declined to become a surety in such bond, and when there were other adequate remedies within his reach; also the fact that the property passed back into the custody of the Loewens, or one of them, immediately after the forthcoming bond was given, and that the trustee acted apparently in close alliance with the fraudulent grantors or their attorney,—are each and all circumstances which a jury would probably regard as quite significant, and from which it would be their privilege to infer that he was fully cognizant of the object which the grantors in the deed of trust were endeavoring to accomplish, and that he acted throughout the transaction merely as their agent. In the whole range of the law there is no class of cases in which a jury should be allowed greater latitude in forming an opinion based upon inference than in cases like the one at bar, because of the inherent difficulty of proving a fraudulent intent and knowledge thereof on the part of another, and because of the great care usually taken by those concerned to conceal and suppress the evidence of such facts. A jury will not ordinarily go far astray in divining the motives of men who have been engaged in a business transaction like the one now under consideration; and such cases, when they arise, should be submitted to a jury, if there are any badges of fraud or circumstances which are calculated to excite a suspicion in the mind of a reasonable person that the transaction was not entirely fair and honest. Swofford Bros. Dry-Goods Co. v. Smith-McCord Dry-Goods Co., 56 U. S. App. 355, 29 C. C. A. 239, 85 Fed. 417, 420; Warner v. Norton, 20 How. 448, 460, 15 L. Ed. 950; Snyder v. Free, 114 Mo. 360, 376, 21 S. W. 847; Massey v. Young, 73 Mo. 260, 273; Renney v. Williams, 89 Mo. 139, 145, 1 S. W. 227. Without pursuing this branch of the subject at greater length, it will suffice to say that, upon the facts disclosed by the record, the case was not one in which the trial court was required

to assume the responsibility of directing a verdict in favor of the trustee upon the ground that there was no evidence from which it could be inferred that he was concerned in the alleged fraud. That issue, we think, was properly left to be determined by the jury.

It is further urged by counsel for the interpleader, although as much stress is not laid on this assignment as on the former, that the jury were misdirected with respect to what constitutes notice to a vendee or a trustee of the fraudulent intent of the vendor or grantor under whom he claims. The supposed error in this respect inheres in the following excerpt from the charge:

"If you are satisfied, gentlemen, from all the facts and circumstances in evidence, that it was the intent and purpose of Loewen Bros. in making this deed of trust to hinder and delay their other creditors, and to secure thereby a use and benefit to themselves, then you will proceed to the other inquiry in the case as to the relation of the trustee, Batavia, to this transaction, as to whether or not he had notice of the alleged fraudulent intention and purpose of the Loewen Bros. The supreme court of this state in Rhodes v. Outcalt, 48 Mo. 370, speaking of what constitutes notice, employed this language as expressive of the law: 'A notice is regarded in law as actual when the party sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information. Actual notice embraces all degrees and grades of evidence from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice. Where the party taking has knowledge of any fact sufficient to put him upon inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of negligence equally fatal to his claim to be considered a bona fide purchaser.' *This presumption is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right or other thing in conflict with that that he was taking.* So, gentlemen, in considering the question of whether or not Batavia was privy to the fraudulent purpose on the part of Loewen Bros., * * * you can consider the relation, whatever that was, of Batavia to the office of Ringolsky, where this deed of trust was executed, his opportunities of knowing, and from the relation between them, and all the circumstances attending the making of the deed, as to whether he had notice of any combination or scheme in making this deed to defraud or not."

The criticism of this excerpt from the charge is that it made knowledge of facts or circumstances which were sufficient to put Batavia upon inquiry as to the motives of his grantors equivalent to actual knowledge of their motives, and did not require the jury to find the existence of actual knowledge. It may be conceded that it is the law in the state of Missouri, and in some other states, that, while knowledge of a fraudulent intent or of an outstanding equitable right or title may be inferred from facts or circumstances which are sufficient to put one on inquiry and lead to a discovery, yet when want of notice is averred or is invoked as a defense, and it becomes the duty of a jury or a chancellor to make a finding thereon, actual knowledge must be found, such facts and circumstances as are adequate to put one on inquiry being nothing more than evidence from which knowledge—the ultimate fact—may be inferred. Van Raalte v. Harrington, 101 Mo. 602, 611, 612, 14 S. W. 710, 11 L. R. A. 424; Parker v. Conner, 93 N. Y. 118, 124; Williamson v. Brown, 15 N. Y. 354; Carroll v. Hayward, 124 Mass. 120; Knower v. Clothing Co., 57 Conn. 202, 221,

17 Atl. 580; Seavy v. Dearborn, 19 N. H. 351; Coolidge v. Heneky, 11 Or. 327, 8 Pac. 281; State v. Mason, 112 Mo. 374, 380, 20 S. W. 629; Bisp. Eq. § 268. But, even if it be conceded that the rule of law as respects notice be as last stated, and as counsel for the interpleader contends, still we think that the supposed error in the excerpt from the charge is cured by that paragraph which we have placed in italics. In that clause, after quoting the language of the supreme court of the state of Missouri in an early case, the learned trial judge clearly advised the jury that knowledge of facts sufficient to put one on inquiry is not tantamount to actual notice, such as will serve to defeat a right or title, but that it simply warrants an inference of actual notice, which inference may be rebutted by proof that actual knowledge was not acquired. Besides, in another part of the charge, where the issues to be determined by the jury were finally summarized, the trial court instructed the jury to determine, so far as Batavia was concerned, whether he was privy to the alleged fraud of Loewen Bros., and participated therein; and in that connection it also directed them to return a verdict for the interpleader if they found that he was not privy to the alleged fraudulent scheme of the grantors in the deed of trust, and did not aid or abet them therein. Looking at the charge as an entirety, and reading it as it was doubtless understood, and as we understand it, we are satisfied that the jury were not misled with respect to the question of notice, but that they were in fact required to determine whether the interpleader was an actual participant in the fraud.

It is finally urged that, even if the deed of trust in controversy was fraudulent by reason of the motive which actuated Loewen Bros. in executing the same, and that even if Batavia, the trustee, was cognizant of that fact, and participated in the fraud, nevertheless the National Bank of Commerce, one of the beneficiaries in the trust, may claim the benefits accruing to it under that conveyance, because it was not itself a party to the intended fraud. With respect to this contention it is to be observed, however, that none of the beneficiaries under the deed of trust are parties to this proceeding. They have not intervened in the cause, and asserted rights of their own, as distinguished from those of their trustee, but have left him to prosecute the action as he thought best, and are apparently content to rest their case on such title as he may succeed in establishing. In short, this is a proceeding at law, in which the interpleader alone takes issue with the attaching creditor, and seeks to maintain that his legal title to the attached property derived under the deed of trust is superior to that acquired by the attaching creditor by virtue of the writ of attachment. It has been held in the state of Missouri that, where there are several debts secured by a deed of trust, one of which is fictitious and fraudulent, the conveyance may nevertheless be upheld as to bona fide creditors who are secured, provided the trustee acted in good faith, and was ignorant of the fraudulent nature of one of the claims. Woodson v. Carson, 135 Mo. 521, 526, 35 S. W. 1005, and 37 S. W. 197. The rule is in that state, however, that if a trustee in a deed of trust given to secure creditors is privy to or has knowledge of a fraudulent intent on the part of the grantor in executing the instrument, such knowledge

will invalidate the instrument as to the beneficiaries. Crow v. Beardsley, 68 Mo. 435, 439; Ross v. Ashton, 73 Mo. App. 254, 257. It is also a general rule that a trustee is the agent of his cestui que trust in all matters pertaining to the management and control of the trust property, and that whatever knowledge or notice impairs the legal title of the former to the trust property will also impair the equitable title of the latter. The only limitation upon this rule is that a beneficiary will not be affected by notice to the trustee, or by his acts, where the latter is merely the repository of the legal title, and has had no previous connection therewith, and has no active duties to perform with respect to the trust property. Fidelity Ins., T. & S. D. Co. v. Shenandoah Val. R. Co., 32 W. Va. 244, 259, 9 S. E. 180; Pierce v. Emery, 32 N. H. 484, 521; Miller v. Railroad Co., 36 Vt. 452, 483; Columbian Bank's Estate, 147 Pa. St. 435, 23 Atl. 625, 626, 628; Bisp. Eq. § 268; Jones, Corp. Bonds, § 299. But, if this were not the local, as well as the general, law applicable to the question under consideration, we should nevertheless be of the opinion that the trustee could not prevail in this proceeding in the teeth of a finding by the jury that he was a party to the alleged scheme to defraud, which was concocted by Loewen Bros., and that he does not come into court with clean hands. This finding ought to bar the way to a recovery by the interpleader himself, or by any one who seeks to recover upon his title. If either one of the beneficiaries under the deed of trust has an equitable claim to the property in controversy which is unaffected by the fraud of the trustee,—as to which point we express no opinion,—they should prosecute it in their own name, and by that means avoid responsibility for the alleged fraudulent conduct of the trustee. In conclusion it may be said that some exceptions were taken during the trial to the admission of evidence, which exceptions have not been overlooked. But, as the case is one in which wide latitude is ordinarily allowed in the examination of witnesses and in the admission of proof of collateral facts which have any tendency to develop the intent of the parties, we are not prepared to hold that any of the exceptions were well taken. The judgment below is accordingly affirmed.