## JOHN H. HEIDBREDER v. SUPERIOR ICE & COLD STORAGE COMPANY et al., Appellants.

(No. 1.)

### Division One, November 23, 1904.

1. **CORPORATION: Sale of Properties to Stockholders.** The transfer of the entire properties of a corporation in failing circumstances to a part of the stockholders in satisfaction of money honestly loaned by them to the company and in consideration that they would pay all the other debts of the company, if fairly and honestly done and the amount of property so transferred is not an unreasonable sum for the security of such debts, even though unauthorized by the minority stockholders, is valid.

2. ———: ———: **Validity How Determined: Ice Plant: Risk of Unfavorable Season.** The validity and bona fides of the transfer of the properties of a corporation to its stockholders in satisfaction of debts due them, are to be judged in the lights as they appeared to the parties at the time. Where an artificial ice plant at the time the transfer is made is out of repair, and without credit or money, and is heavily in debt to its stockholders and others, and it can not then be determined whether the coming winter will be open or closed, and, therefore, favorable or unfavorable for the business of such a plant, the fact that the transferees took the risk of its being an unfavorable season is to be considered in estimating the value of the property at the time of the transfer, and in determining the validity and bona fides of the transfer.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. A. Haeussler* and *C. S. Broadhead* for appellants.

(1) Upon the uncontradicted facts recited in the pleadings and respondent's evidence, respondent could

not recover, and the bill should have been dismissed; he failed to offer to do any equity or contribute one cent to the making of the plant useful or valuable, or to pay its debts. The court will, in cases like this, examine the evidence. Morley v. Harrah, 66 S. W. 942; Drosten v. Mueller, 103 Mo. 624. (2) There was no equity in the bill. Appellants were each and all perfectly solvent and able to respond in damages in an action at law for any wrong done respondent, and respondent did not offer to do anything to save the plant to the stockholders or make it available for the benefit of stockholders or creditors. (3) The court committed error in failing to pass upon appellants' motion for new trial until after all sales, reports of referee, and other motions, had been passed upon, thus preventing appellants from appealing from judgment, making temporary injunction final, until after the sales had been made. The judgment is only final upon overruling of motion for new trial. Walter v. Scofield, 167 Mo. 537. (4) The sale of the directors, with the consent of all the stockholders, except respondent, for benefit of all the creditors, including the directors, being openly and honestly made, passed a perfect title, and court should have so held. Butler v. Land & Mining Co., 139 Mo. 467; State ex rel. v. Manhattan R. M. Co., 149 Mo. 181; Hutchinson v. Green, 91 Mo. 367; Cheer v. Collingwood, 86 Mo. 260; Foster v. Mulanphy P. M. Co., 92 Mo. 89; Swentzel v. Inv. Co., 168 Mo. 278. (5) The decree and judgment was in direct conflict with the law as laid down by this court in such cases, and the fact that trial judge did not agree with this court in its construction of the rights of creditors of a corporation, who were also directors, was no cause for granting the decree when it was admitted that the sale was openly and honestly made, and, if wrong-doers, appellants were perfectly responsible in damages. It was the duty of trial court to follow the law as laid down by this court in such cases. Butler v. Land & Mining Co., 139 Mo.

467; State ex rel. v. Manhattan R. M. Co., 149 Mo. 181; Tanner v. Railroad, 180 Mo. 1.   (6) The transfer and sale having been made in accordance with consent of all the stockholders, except respondent, and with his knowledge, was binding on all, and respondent can not be heard to deny the validity of the act.   Riesterer v. Land & Lumber Co., 160 Mo. 141.

*Barclay & Fauntleroy* for respondent.

MARSHALL, J.—This is a bill in equity asking for the appointment of a receiver for the defendant company, for a removal of the defendants as directors of the company, for an injunction to restrain the defendants from disposing of or interfering with the property, and to have a transfer of the property by the defendant company to the defendant George L. Heidbreder as trustee for himself and the other defendants set aside.

The case made in this: The defendant company has a capital stock of eighty thousand dollars, divided into eight hundred shares of the value of one hundred dollars each, fully paid up.  The stockholders are:

John H. Heidbreder, the plaintiff, 150 shares.

George L. Heidbreder, one of the defendants, 200 shares.

Charles W. Heidbreder one of the defendants, 150 shares.

Julia A. Heidbreder,  one of the defendants, 50 shares.

Anna M. Heidbreder, one of the defendants, 50 shares.

Lena L. Kunkel, one of the defendants, 50 shares.

Katie L. Heidbreder, one of the defendants, 50 shares.

Theodore W. Mertens, one of the defendants, 50 shares.

C. F. Hoffman, one of the defendants, 50 shares.

Total ........ .... .... .......... ....800 shares.

The plaintiff and all of the stockholders, except Katie L. Heidbreder and C. F. Hoffman, were directors of the company. The object of the company was to manufacture artificial ice. The company started business in 1892, and never paid a dividend. On November 17, 1900, a meeting of the stockholders was held, at which the plaintiff was present and all the other stockholders were present or represented by proxies. It then appeared that the company was indebted to the defendants and to said Hoffman, for money loaned by them to it and used by it, in the sum of $34,958.89, and that it owed $5,420.49 to other persons, and also owed the plaintiff $100 for money he had loaned to it. The plant was in very bad shape, and it was estimated it would take from ten to fifteen thousand dollars to put it in running order. It was not then known whether the winter would be mild or a cold one, and according to the estimate of the various witnesses the value of the plant would be diminished from ten to fifty per cent in case the winter was an open one. The company had no money and no credit. At said meeting of the stockholders a resolution was adopted by the stockholders to the effect that as the company owed its stockholders about $29,000, and also other debts, aggregating in all about $38,000 and could not go on without money, and as plaintiff and Charles Heidbreder had loaned the company nothing, therefore, unless John H. Heidbreder and Charles W. Heidbreder, would loan the company $7,500 each, within ten days, payable at two years with six per cent interest, and the other stockholders would extend their claims against the company for two years, with six per cent interest, the entire plant should be sold for the best price obtainable, and if no purchaser could be found by December 10, then the same should be sold and delivered to the stockholder creditors on condition that they pay all the other debts due by the company. All of the stockholders, except the plain-

tiff, voted in favor of the resolution. The female stock-holders and Hoffman offered to sell their shares to the plaintiff, and Mertens offered to sell enough of his shares to him to enable him to have a controlling inter-est in the company, but he refused to buy. He also refused to loan any money to the company. He says he tried to get a partner to go with him and take the plant for $40,000, but he could not find anyone who was willing to do so, and he refused to give $40,000 for the plant in December, 1900. No purchaser was found for the plant. Accordingly on December 15, 1900, a meet-ing of the directors was held, at which the plaintiff was present and all the other directors were present in per-son or by proxy, and a resolution was adopted direct-ing the officers of the company to sell, convey and de-liver all the property of the company to George L. Heidbreder in trust for himself, Anna, Julia and Katie Heidbreder and for Lena Kunkel, Theo. W. Mertens and C. F. Hoffman, in proportion to their demands, they to pay all other debts and liabilities of the com-pany of every kind. All of the directors voted for the resolution, except the plaintiff. Accordingly on De-cember 17, 1900, a deed was made to said George L. Heidbreder as trustee, of all the property of the com-pany, and he entered in possession of the same, and paid off the $5,420.49 that the company owed to other persons and tendered to plaintiff the $100 which he had loaned the company, with interest thereon. The trus-tee immediately went to work repairing the plant and getting ready for the season of 1901. The defendants even then on January 19, 1901, offered to let plaintiff come in on equal terms with them if he would put up an amount proportional to theirs. This he declined to do, but offered to loan them $10,000, if he was given a lien for his money and was put in charge of the busi-ness, which they declined. He then instituted this suit on January 26, 1901. The circuit court refused to ap-point a receiver, but granted a temporary injunction,

restraining the defendants from transferring the prop-
erty. The defendants then formed a new company
called the Heidbreder Ice Company, and leased the
plant from the trustee at a rental of $3,200 a year, and
agreed to pay one-half of the expense of putting the
plant in proper repair and also to repay the trustee
$1,622.33 of the $1,800 which he had already expended
for such repairs. The entire sum expended by
defendants and the new company for repairs was
found by the trial court to be $13,391.20 and
the amount due to defendants by the old company
was found to be $40,379.38. So that at the
time of the judgment the claims of the defendants
amounted to $53,770.58. The trial court found that the
consideration paid by the defendants for the transfer
of the property to them, "in the opinion of all con-
cerned, save the plaintiff, was the full value of the prop-
erty," and that the transfer "was openly and honestly
made on the advice of counsel." The plaintiff called
three witnesses who testified as to the value of the prop-
erty. Krause said that he examined it in the spring
of 1889, and considered it worth $54,772. Ruemmeli ex-
amined it in October, 1899, and said he considered it
worth $61,090, but that it would depreciate in value ten
per cent a year, and if not properly handled it would
depreciate $12,000 a year in value. The plaintiff him-
self said it was worth $75,000 to $80,000 in November,
1900, but he refused give $40,000 for it in December,
1900. The evidence introduced by the defendants
showed that it was in a most wretched condition, and
could not be operated at all unless ten or fifteen thou-
sand dollars was expended to put it in shape. The ma-
chinery was rusty and nearly worn out. The trial court
held that in view of the negative vote of the plaintiff
at the meeting which adopted the resolution to sell, and
of the conflicting testimony as to the value of the prop-
erty, and of the inability of the court to yield his as-
sent "to the doctrine that the directors of a corpora-

tion may lawfully sell the corporate property to themselves, and that too, at a valuation fixed by themselves, and thereby acquire an absolute title to the same," it would hold the transfer of the property to the trustee for the defendants to be invalid, and ordered it set aside, and further ordered the property to be sold and the proceeds to be distributed under the order of the court. The defendants filed a motion for a new trial, but the court refused to rule upon it at that time. Accordingly the property was sold and the plaintiff was the only bidder therefor at the price of $55,100, that being just about enough to pay the claims of the defendants against the company and the costs of the case. The defendants filed a motion to set aside the sale on the ground that to allow the plaintiff to have the property at that price would be to enable him to get it for less than the campany owed the defendants, and "would be a punishment to defendants for doing what was right to protect themselves as creditors" of the company. The plaintiff filed a motion to confirm the sale. Thereupon the court made an order reciting that as Herman A. Haeussler, a stockholder in the new company, had filed and signed a stipulation consenting to a resale and binding himself to start the property if resold at $65,000, the sale was disapproved and the property ordered resold. On a resale the property was sold to the Heidbreder Ice Company for $80,000. The defendants filed exceptions to the sale, principally on the ground that the value of the property had been greatly enhanced by the open winter, and that no outside bidders had been found and that it was a mere contest between the stockholders of the old company as to who should have the property. The court overruled the exceptions, sent the case to a referee to state the account and then distributed the proceeds as follows: to the referee for fees and expenses $106, to the Heidbreder Ice Company, as successor of George L. Heidbreder, $19,083.55 for care, improvements and repairs of property; to the defendants

as creditors of the company, $41,287.91; to commissioner for stamps and notarial fees in making conveyance $90; to plaintiff three-sixteenths of the remainder, amounting to $3,633.48, and whatever was left to the other defendants. The commissioner was allowed nothing for his services or attorney's fees. The defendants filed a motion to set aside this order of distribution. The court overruled the same, and also overruled the defendants' motion for a new trial and the defendants appealed.

## I.

The pivotal question in this case is, as to the validity of the transfer of the property to the defendants, in satisfaction of what the company owed them and upon payment by them of all the debts of the company.

Whatever may be the law in other jurisdictions, the rule is well settled in this State that stockholders or directors of a corporation can lawfully lend money to the company, and the company can lawfully prefer them, by transferring enough property of the company to fairly and reasonably secure or pay them what the company owes them. [Foster v. Mullanphy Planing Mill Co., 92 Mo. 79; Foster v. Belcher Sugar Refining Co., 118 Mo. 238; Alberger v. Bank, 123 Mo. 1. c. 322; Schufeldt v. Smith, 131 Mo. 280; Hall v. Goodnight, 138 Mo. 1. c. 582; Butler v. Mining Co., 139 Mo. 467; Swentzel v. Inv. Co., 168 Mo. 272.]

The indebtedness of the company to the defendants, all of whom were stockholders, and all, except Katie L. Heidbreder and C. F. Hoffman, were directors, was bona fide, for money actually loaned by them to the company, in the regular course of business. The transfer of the property to them in satisfaction of their debts and in consideration that they would pay all the other debts of the company, was openly, fairly and honestly done, and was authorized by every stockholder and director, except the plaintiff. The amount of prop-

erty transferred was not an unreasonable amount to secure the payment of such debts. The total debts due to the defendants and assumed and afterwards paid by them, amounted to $40,379.38, and the property transferred was not at the date of the transfer, in its then condition and in the uncertainty whether the winter would be an open or closed one, and in view of the admitted annual depreciation in the value of the plant, worth more than $40,000, which is clearly shown by the attempt of the plaintiff to get some one to go in with him and buy it at that price, and his inability so to do, and by his refusal to give that amount for it in December, 1900. This value is further shown to be its true value, by the fact that after defendants had spent $13,-391.20 (as the court first found) in repairs upon it, thus making the property stand them $53,770.58, the plaintiff only bid $55,100 therefor on April 10, 1901, at which time it was known that the winter had been an open one and that there would be a demand the next summer for manufactured ice, and which was only about enough to pay what was due the defendants and the costs of the case. The fact that the court afterwards forced the defendants to offer $65,000 as a condition precedent to ordering a resale and that upon a resale, on May 1st, the defendants bid $80,000 for the property, they having, as the referee's report showed and as the order of distribution showed, expended $19,083.55 on the property after they got it, and thereby made it possible to operate it successfully, when it was not possible to do so when the transfer to them was made, is not a fair criterion by which to determine the value of the property at the date of the transfer.

The validity of the transfer and the bona fides of the transaction must be judged in the lights as they appeared to the parties at the date of the transfer, and as the defendants took the risk of the depreciation and loss if the winter turned out to be a cold one and therefore the natural supply of ice was so great as to make the

business of manufacturing ice unprofitable, so they were entitled to the enhanced value of the plant by reason of the winter proving to be a mild one and therefore the supply of natural ice not sufficient to meet the demand, and hence the business of manufacturing ice a profitable one.

In addition to this, at the time of the transfer, the company had no money and no credit. Its plant was in such bad shape that it could not be operated. The defendants had put up nearly thirty-five thousand dollars to enable the company to continue business. The plaintiff and Charles W. Heidbreder had put up practically nothing. The situation was that the company had to have ten or fifteen thousand dollars to put that plant in repair and to get into shape to do business the next summer. The stockholders had a meeting and the plaintiff and Charles were given an opportunity of loaning the company the money so required. They owned three-eighths of the stock and were asked to contribute fifteen thousand dollars. The defendants owned five-eighths of the stock and had loaned the company about thirty-five thousand dollars. The plaintiff refused to lend the company any money at that time or to take any risks. The stockholders then (on November 17th) resolved that the property be sold and that, if a purchaser was not found by the 10th of December, the property be turned over to the defendants in payment of their claims, they to pay all the debts of the company, which was done. The defendants then went to work repairing the property and spent nearly twenty thousand dollars in doing so. Under such circumstances the sale was bona fide, open and honest, and the amount of property transferred was not in excess of the debts.

The learned trial judge found the facts to be substantially as here stated, but set aside the transfer because he did not believe that directors of a corporation can lawfully sell the corporate property to themselves,

at a valuation fixed by themselves. The rule as thus stated is not strictly applicable to the facts in this case. Here the stockholders and directors transferred to themselves only a sufficient amount of property to pay what the company honestly owed them and what the company owed others which they assumed to pay, when the company was wholly unable to go on with its usual business, and was without money or credit, and when the property transferred was inadequate in its then shape for the purpose of continuing the business, and when the complaining stockholders refused to aid the company financially or to buy the property at the price at which the defendants took it. Under such circumstances the transfer of the property was fair, honest, legal and for the best interests of the company as well as of its creditors. And this being so, the trial court was in error in setting it aside.

The judgment of the circuit court is therefore reversed, and the cause remanded with directions to it to set aside all its orders and decrees in the case and to dismiss the bill at the cost of the plaintiff.

All concur.