STEPHEN A. MOONEY et al., Respondents, v.
CHICAGO, BURLINGTON & QUINCY RAIL-
WAY COMPANY, Appellant; HAMILTON &
KINGSTON RAILROAD COMPANY, Defendant.

**Kansas City Court of Appeals, May 20, 1907.**

1. **CORPORATIONS: Corporate Debt: Application of Money: Se-
curity.** Certain stockholders and officers of a corporation gave
their note to the bank to which the corporation was indebted
for the purpose of relieving the corporation, the corporation at
the same time promising to give them the proceeds from the
sale of a certain locomotive to be applied to the payment of
the note. *Held,* the note was not the private debt of its makers
but was a security to the bank for the debt of the corporation
and the bona fide transfer of the proceeds of the locomotive was
good against general creditors.

2. **DEBTOR AND CREDITOR: Current Account: Application of
Money: Trust Fund.** Where the money of a debtor comes to
the hand of his creditor, the latter has the right to apply it on
the indebtedness of the former, and between the two thus
mutually indebted the balance is the debt; and where the money
is impressed with the trust of which the creditor has no notice
he can still take it as a credit on the indebtedness, and it is be-
yond the reach of the *cestui que trust.* [Following Bank v.
Bank, 102 Mo. App. 357.]

Appeal from Caldwell Circuit Court.—*Hon. Joshua W.
Alexander,* Judge.

REVERSED.

*O. M. Spencer* and *H. J. Nelson* for appellant.

(1) The Burlington had a right to act on the au-
thority of Clark's letter, as he was president and general
manager of the H. & K. and had been in charge of its
business for several years prior thereto. R. S. 1899,
sec. 974. (2) In the absence of an express contract
by Burlington to sell the scrap of engine and turn the
proceeds over to plaintiff, the Burlington, having re-

ceived the engine from the H. & K., had a right to treat said engine and the scrap thereof as the property of the H. & K., and to apply the value thereof on the indebtedness of the H. & K. to it, regardless of any clandestine verbal pledge thereof to plaintiffs. Sanburn v. Bank, 115 Mo. App. 55; Hardware Co. v. Mayer, 110 Mo. App. 19; Bank v. Bank, 102 Mo. App. 364. Furthermore, the Burlington had no notice of the alleged pledge to plaintiffs until five months after it received the engine. (3) In the absence of a specific agreement by Burlington to otherwise apply the proceeds of the engine, the Burlington had the right to apply the same as a credit in the account between them just as it did, because it was a mutual, open, running account. 25 Am. and Eng. Ency. Law (2 Ed.), p. 542; Bank v. Bank, 102 Mo. App. 364; 1 Am. and Eng. Ency. Law (2 Ed.), p. 435; Chadwick v. Chadwick, 115 Mo. 586. (4) The Burlington therefore had a right to retain the value of the scrap as a set-off on the indebtedness of the H. & K. to it, regardless of solvency or of whether there was an open account. 25 Am. and Eng. Ency. Law (2 Ed.), 542; Henman v. McNamara, 77 Mo. App. 7; McCuin v. Frazier, 38 Mo. App. 65. (5) But because of the insolvency of the H. & K., the right of the Burlington to set-off its demand against the value of the scrap is beyond question, the law of equitable set-off against insolvent debtors being well settled in Missouri. Smith, Admr., v. Perry, 197 Mo. 459; Foote v. Clark, 102 Mo. 409; Reppy v. Reppy, 46 Mo. 573; Gemmel v. Hueden, 71 Mo. App. 297; Wabash v. Bowring, 103 Mo. App. 166; Mill v. St. Louis, O. & S. Co., 152 U. S. 615. (6) And the right of equitable set-off against an insolvent debtor exists against a pledgee, particularly if the pledgee, at time of pledge, has notice of the indebtedness of the pledgor to creditor who declares the set-off. Gemmel v. Hueden, 71 Mo. App. 298; Wabash v. Bowring, 103 Mo. App. 171. (7) Plain-

tiffs in their petition seek to recover the value of the engine from Burlington on theory that the H. & K., in delivering the engine to Burlington, was an agent of plaintiffs' and not acting for itself. Plaintiffs have failed in that theory, for the following reasons: (a) Because the agreed statement fails to show such agency, hence there is a complete failure of proof. (b) Because the pretended agency was not disclosed to Burlington until five months after the delivery of engine to Burlington, nor until long after the Burlington had applied the value thereof on the indebtedness of H. & K. to it, nor until after said credit had been absorbed by mere liquidated demands against the H. & K., hence the Burlington's right of set-off was not affected by such agency, if an agency existed. 25 Am. and Eng. Ency. Law (2 Ed.), p. 538; Henderson v. Batts, 56 Mo. App. 144; Rhea v. Mfg. Co., 81 Mo. App. 407.

*Crosby Johnson & Son* for respondents.

(1) It was not Frank Clark, general manager, but Clark the individual, who was appointed by the H. & K. trustee for plaintiffs, to dispose of the engine and apply its proceeds to the purposes specified in the order appointing him. Hoppe v. Saylor, 53 Mo. App. 4. (2) A verbal chattel mortgage is just as good as a written one between the parties to it, and against all the world, except a purchaser for value or an attaching or execution creditor. Howard v. Garyl, 50 Mo. App. 449; Bank v. Bank, 50 Mo. App. 92; Furniture Co. v. Davis, 76 Mo. App. 512. (3) The right of set-off, and of a creditor to apply funds which come to his hands in payment of a debt due him from a debtor depends on whether the debts are mutual. If a fund is charged with a trust and the other not, the one cannot be set off against the other, nor used to satisfy the other. Payne v. O'Shea, 84 Mo. 129; Gansuer v. Franks, 75 Mo. 64; Hazeltine v. Thrasher, 65 Mo. App. 334. (4)

The fact that H. & K. was owing defendant would not justify the latter in applying the funds of others, or those clothed with a trust to payment of a debt due from it. Insurance Co. v. Hill, 12 Mo. App. 148; Russel v. Owen, 61 Mo. 185. (5) The defendant by reason of the delivery of the engine to it for purposes of wreckage could only acquire such rights in it as Clark was authorized to confer. 12 Am. and Eng. Ency. Law (2 Ed.), 689; Edwards on Bailments, 117, 118; State ex rel. v. Thompson, 120 Mo. 12; Barry v. Bonniger, 46 Md. 59; Jones v. Falk, 50 N. J. Eq. 468, 35 Am. St. 782; Dickerson's Appeal, 115 Pa. St. 198. (6) A valid trust may be created in personalty by a verbal agreement in respect to the property. 1 Perry on Trusts, secs. 82, 86; Ryburn v. Bakewell, 88 Mo. App. 640; Ray v. Simmons, 23 Am. Rep. 447; Sherwood v. Neal, 41 Mo. App. 416; Bricker v. Stroud Bros., 56 Mo. App. 183; Allgear v. Walsh, 24 Mo. App. 134. (7) The H. & K. although insolvent may grant a preference to creditors, although they be officers and shareholders. Foster v. Milling Co., 92 Mo. 79; Foster v. Railroad, 118 Mo. 238; Schuefeldt v. Smith, 131 Mo. 182; State ex rel. v. Rubber Mfg. Co., 149 Mo. 198; Pulis v. Pallis, 157 Mo. 565.

BROADDUS, P. J.—The petition in substance alleges that in the summer of 1905 the Hamilton & Kingston Railroad Company was the owner of a certain locomotive engine, at which time it was indebted to the Kingston Savings Bank in a considerable sum for money advanced and loaned to it, and that it agreed with plaintiffs if they would execute and deliver to said bank their promissory note for six hundred dollars on account of such indebtedness, it would sell and assign to plaintiffs said engine, and would as their agent send the same to the machine shops of the other defendant herein at St. Josph, Missouri, and would have the same

wrecked and pay over to plaintiffs the sum derived from the wreckage less the cost of wrecking the same, so that such proceeds could be applied to the payment of said note. That, in pursuance of said agreement they executed and delivered their note to said bank for said sum of six hundred dollars and directed the said Hamilton & Kingston Railroad Company to forward said engine to said machine shops at St. Joseph, Missouri, for the purpose of being wrecked and the value of the wreckage ascertained; and the said Hamilton & Kingston Railroad delivered said engine to the other defendant herein to be transported to St. Joseph to be wrecked at said machine shops, and the latter received the same as agent and bailee of its codefendant and plaintiffs to transport to its shops at St. Joseph, then and there to wreck the same and to ascertain the value of the wreckage and to account to them for the net value of such material after deducting cost of transportation and wreckage. The petition then alleges that defendant Chicago, Burlington & Quincy Railroad Company received the engine, transported it to St. Joseph and wrecked the same, but refused to account to plaintiffs for any part of the value of the material; and that the net value of such material was six hundred dollars.

The Chicago, Burlington & Quincy Railroad Company after a general denial of the allegations of the petition except that wherein it is alleged to be a corporation, states that it received from its codefendant the engine in question and transported it to its shops at St. Joseph for the purpose of wrecking it and disposing of the material, with the direction to wreck it and dispose of the material therein to the best advantage and to place the proceeds to the credit of its codefendant, with which direction it complied. Defendant alleges that the net value of the engine was only $352.03. The answer further sets out that its codefendant was indebted to it in the sum of $1,979.60, for rent of

railroad rails and other things, also including the cost of transportation and wreckage of said engine; against which it gave its codefendant credit for said sum of $352.03. The answer further sets up that plaintiffs were stockholders and officers of the codefendant corporation at the time of the alleged agreement and the same is therefore illegal, and further that plaintiff had not paid the note mentioned.

The facts as developed on the trial were as follows: In December, 1901, the Hamilton & Kingston Railroad Company, which for convenience we will call the H. & K., was the owner of a railroad between Hamilton and Kingston in Caldwell county, Missouri, at which time it leased from the Chicago, Burlington & Quincy Railroad Company, hereinafter called the Burlington Company, for the year 1902 rails and other track material at the agreed price of $83.33 per month, payable in advance, to be delivered back to the lessor at the expiration of the lease on board cars at Hamilton. It was further agreed in case the H. & K. Company failed or refused to so return said rail and other material the Burlington Company might take up the same at the expense of the former. The two companies also had an arrangement for interchange of freight traffic and the Burlington during the time to furnish the H. & K. with railroad supplies. The latter owned but one engine, the one now in dispute, which was old and worn and became in March, 1902, unfit for use, at which time it leased from the Burlington an engine to supply its place and used it until the sixteenth of the following April, when it ceased to operate its railroad. On April 1, 1902, the H. & K. Company at a meeting of its stockholders made the following entry on the minutes of its proceedings: "Frank Clark was ordered and authorized to dispose of engine No. 13 to the best advantage of the H. & K. Company." On April 7, the H. & K. Company delivered said engine to the Burlington Company

to be taken to St. Joseph for purpose aforesaid. The delivery was accompanied with a letter from Frank Clark, the general manager of the H. & K., with directions that the engine be scrapped to the best advantage, with directions to render to him a statement showing what was realized from the material and have the money credited to the H. & K.

On April 8, the day after the engine had been delivered to the Burlington Company, the plaintiffs executed the note mentioned in the petition to the Kingston Savings Bank in the sum of six hundred dollars, in payment of the H. & K. Company's indebtedness to said bank. All the plaintiffs were stockholders of the H. & K. and six of them were its directors. On April 14, the H. & K. Company held a meeting and made a minute in its proceedings for the purpose of amending the minutes of its meeting of April 1, as follows: "Frank Clark was ordered and authorized to dispose of engine No. 13 to the best advantage and account for the proceeds to those members of this company who executed a note to the Kingston Savings Bank for the balance of a certain indebtedness of the company to the bank and others, and to indemnify and protect the subscribers of such note against liability thereon." In August, 1902, after the engine had been scrapped and the proceeds credited by the Burlington to the H. & K. Company for indebtedness growing out of leasing of said rails, railroad material, and engine, the plaintiffs made demand for the same, which was the first notice the Burlington Company had of the plaintiffs' claim. Prior to April 1, 1902, the H. & K. Company had been operating its railroad upon a track the rails of which belonged to the Burlington Company for which the former was to pay a stipulated monthly rental. On April 1, the H. & K. Company ceased to operate its railroad and so notified the Burlington Company. It is conceded that the H. & K. Company was insolvent.

The finding and judgment were for the plaintiffs from which defendant Burlington Company appealed.

The plaintiffs contend that Frank Clark had no legal authority under the order of the stockholders made on the first of April, 1902, to direct that the proceeds of the engine after it had been scrapped be applied to the credit of the H. & K. Company on its indebtedness to the Burlington Company, notwithstanding the language of the order may be so construed. But they insist that the entry on the minutes of April 1 was nugatory as they did not state correctly the order made by the meeting, and that the amended minutes which state the order as really made are to govern the authority of Clark to dispose of the engine. For the purpose of the case, however, we do not deem it a matter of importance as the case does not depend upon the authority of Clark as to the manner in which he should dispose of the proceeds of the engine.

It is contended by appellant, the Burlington Company, that the H. & K. Company being insolvent at the time the order of April 14 to Clark to dispose of the engine and pay the proceeds to the plaintiffs to indemnify them on note to the Kingston bank, the transaction was illegal; the reason assigned for the contention being that an insolvent corporation cannot lawfully dispose of its property to pay the private debts of its officers and stockholders, by such means giving them a preference over other creditors. The appellant is in error in assuming that the debt of the plaintiffs was a private debt of the officers of the company. But such was not the case. The debt evidenced by the note of plaintiffs to the Kingston bank was but a security to the bank for the debt of the company. In Butler v. Land Co., 139 Mo. 467, it is held: "The transfer by an insolvent corporation to its directors, who are bona fide creditors because of money, previously advanced by them to the company, is valid as against general

creditors." The decision is decisive of the right of the plaintiffs to secure themselves by the mode they adopted to have the proceeds of the engine paid to them as indemnity against their liability to the Kingston bank.

But the real question in the case is, what construction is to be placed upon the act of defendant Burlington Company in placing the proceeds of the engine to the credit of the H. & K. Company before it had any notice of plaintiffs' claim upon said fund. We take it for granted that the general rule is, in instances where the money of the debtor comes to the hands of his creditor, the latter has the right to apply it on the indebtedness of the former, and between the two thus "mutually indebted, the balance is the debt." But plaintiff contends that the general rule does not apply to the case at bar because the fund in question was a trust fund. That the fund was such may also be conceded. In such cases if the creditor has notice that the fund received from his debtor is such, he is not authorized to apply it to his credit; but unless he has such notice, the authorities are that he can take it as a credit on the indebtedness. The question arose in a case recently decided by this court, in which, after careful consideration in an opinion by ELLISON, J., we held: "If the trustee, in violation of his duty, pays an antecedent debt with the trust fund without the creditor's notice thereof, who receives it as a general payment, the money is freed from the trust and cannot be followed by the beneficiary; and this, though an antecedent debt, does not generally constitute a valuable consideration." [Bank v. Bank, 102 Mo. App. 357.] We are persuaded that the opinion is fortified by the best authorities and we feel constrained to abide by the law as therein determined.

The cause is reversed. All concur.