**LAND RED–E–MIXED CONCRETE COM-PANY, and Hugh A. Miner, Trustee of the Estate of Cash Whitman, Inc., Bankrupt, No. 5574–5, Appellants,**

v.

**CASH WHITMAN, INC., a corporation, Pauline Whitman, James C. Heyer, Judy Downey, Glenn L. Whitman, J. Whitman, Robert E. Douglas, Trustee for the American National Bank, and the American National Bank of St. Joseph, Missouri, Respondents.**

No. 52816.

Supreme Court of Missouri, Division No. 2.

April 8, 1968.

Miner, Martin & Speiser, St. Joseph, for appellants.

Dale, Potter & Flynn, Whitney W. Potter, St. Joseph, for respondents.

BARRETT, Commissioner.

This is a suit by a creditor and Hugh A. Miner, trustee in bankruptcy of the estate of Cash Whitman, Inc., to set aside deeds to a certain tract of land in Buchanan County as in fraud of creditors (RSMo 1959, § 428.020, V.A.M.S) and to subordinate a deed of trust to the American National Bank of St. Joseph to the claims of creditors. Originally only the creditor, Land Red-E-Mixed Concrete Company, was plaintiff, Miner was appointed trustee on September 20, 1965, and thereafter intervened in the suit. Originally Cash Whitman, Inc., was a defendant, the other defendants are Pauline Whitman, widow of Cash Whitman and the last president of Cash Whitman, Inc., James C. Heyer, bookkeeper, and one-share officer of the company, Judy Downey, daughter of Cash and Pauline, also a shareholder-director, and Glenn L. and J. Whitman, son and daughter-in-law of the Whitmans and the grantees in the deeds involved here. Glenn and Janet were neither stockholders nor directors of Cash Whitman, Inc., and had no connection wtih the company. The other defendants are Robert E. Douglas, trustee in a deed of trust, and American National Bank, the holder of a $20,000.00 note from Cash Whitman, Inc., and the beneficiary in the deed of trust upon the land involved here.

As stated, the purpose of the suit was to set aside as conveyances in fraud of cred-itors two deeds by which a building and lot, 2401 North Belt Highway, formerly the property of Cash Whitman, Inc., were transferred to Glenn and Janet Whitman. The original deed, in fact the basic conveyance and the true subject matter of this litigation, is a conveyance from Cash Whitman, Inc., to "J" (Janet) Whitman, dated October 31, 1963, recorded November 1, 1963. The other deed to Janet, dated May 6, 1964, was a mere deed of correction "to correct a typographical * * * omission of the corporate name above the signature of the president (in the October 31st deed) Pauline Whitman." There is no question as to the fact and purpose of the second deed and hereafter the case will be treated as if it involved only the deed of October 31, 1963.

Upon the trial of the cause in December 1966 there were no findings of fact, the court simply found "the issues in favor of the defendants and against the plaintiffs," and the plaintiffs have appealed. The plaintiffs' motion for a new trial was overruled on January 25, 1967, and on the same day their notice of appeal to this court was filed. Unfortunately, the official court reporter died on December 28, 1966, and no one has been able to transcribe her notes. Thus a full transcript of this court-tried case is not possible and the parties have agreed that the cause may be submitted upon their narration of "the substance and pertinent parts of the testimony" together with the preserved exhibits and depositions.

These, in brief, are the background circumstances of the appeal. In March 1957 Mr. Cash Whitman formed and was the principal stockholder of the family-operated corporation, Cash Whitman, Inc. Other stockholders were a son, or sons, now deceased, Mr. Heyer and after Mr. Whitman's death, his wife, a defendant, Pauline became president of the company. In March 1957 the Whitman Construction and Engineering Corporation transferred to Cash Whitman, Inc., together with other property the building and lot involved here. On March 3, 1957, Cash Whitman, Inc.,

executed a deed of trust on this property securing a note of $20,000.00 to the American National Bank. Cash Whitman, Inc., was a general contractor, "basically residential construction." The company through Mr. Whitman's efforts had developed one or more residential subdivisions in the St. Joseph area. And after the formation of the corporation a large number of houses, ranging in value from $11,000.00 to $35,500.00, were built and sold, and when Mr. Whitman died in February 1962 there were 28 of these houses sold and financed through a building and loan company. In addition to the house-building project the company had a water-pipeline contract or two in Kansas. The company also owned a quantity of heavy construction machinery and equipment and the office and machine shop maintained at 2401 North Belt Highway. This building had been appraised at various sums, as high as $45,000.00, and, as stated was subject to a first deed of trust of $16,000.00.

Upon Mr. Whitman's death in 1962 the company, according to Mr. Heyer, began selling off its assets to pay its obligations and in fact "to dispose of all the property." The plaintiffs' evidence tended to show that the company could not pay its current liabilities but the defendants' proof was that "there was then an equity in the properties," the 28 houses, of $80,000.00 to $100,000.00. Mr. Heyer said, and others agreed with him, "We felt that, if we could sell them in our own manner to what we felt that they were worth, based on appraised evaluations by realtors, that we had something like eighty to a hundred thousand dollars." In all First Federal Savings and Loan advanced Cash Whitman, Inc., a total of $469,600.00 on 24 houses and on October 31, 1963, these had been reduced to $276,255.63. In the end, however, these mortgages were foreclosed and there was no "excess paid over to the corporation."

In any event, in September 1963, the board of directors met and duly authorized its president, Pauline Whitman, "in her own best judgment and her own discretion, should be allowed to sell" the 2401 North Belt property "for any terms that she should deem satisfactory." The resolution recited a corporation note of $9,235.52 to Mrs. Whitman who "as an individual, did advance and loan said money to said corporation" and it was recited that if there was an excess over the debt to American National Bank "then the residue of said money should be paid to Mrs. Pauline Whitman." Pursuant to this resolution Mrs. Whitman sold the property to her son and daughter-in-law, the deed was to the daughter-in-law, "J" Whitman. The corporation deed recites a consideration of "One Dollars and Other Valuable Considerations." The son testified that he and his wife paid a consideration of $30,000.00 for the property. In the first place, they assumed the indebtedness to the American National Bank upon which there was then due $16,481.25. Thereafter Glenn and Janet made payments on this indebtedness of $6380.40 thus reducing the debt at time of trial to $15,417.96. They also assumed the payment of delinquent interest and taxes. On May 7, 1964 they gave the American National Bank a note for $2500.00 secured by a second deed of trust on the 2401 North Belt property and thereafter have made monthly payments of $41.44 reducing that debt to $1665.74 by November 1966.

Mr. Heyer testified to the sums Mrs. Whitman had loaned to the corporation, as reflected in its records: "The first one that I show is a loan of twelve hundred dollars, dated two, twenty-eight, sixty two. I show another one for twenty-five hundred dollars on five, eighteen, sixty-two; four hundred dollars on five, thirty-one, sixty-two; nine thousand two hundred and thirty-five dollars and fifty-two cents on seven, eighteen, sixty-two." There were other sums in 1963, $345.00, $10.00 and $4436.25. Mr. Heyer could not say what each sum was used for "in every case," the $1200.00 the month Mr. Whitman died was "probably just operating capital," so too the loans of $518.62 and $2500.00. The large item totaling $9235.00 was "mortgage

cancellation" to the building and loan association. Some of the advances were for interest due the bank, back taxes and some "bills of the corporation." At one point Mr. Heyer said that there was a net sum of $8133.75 due Mrs. Whitman from the corporation.

Without detailing all the items, in addition to assuming the balance due the bank of $16,481.25, Glenn said that his mother owed him for work done at Oak Leaf Resort at Osage Beach, for interest advanced, the internal revenue service for social security taxes and other items totaling $8248.55. This and other indebtedness to him was cancelled as part of the consideration for the transaction by which he and his wife acquired title to this property. As to the value of 2401 North Belt the estimates varied from $45,000.00 down but there had never been a bona fide offer of over $25,000.00 and it was Glenn's opinion that there was an equity in the property of approximately $12,000.00.

The plaintiff, Land Red-E-Mixed Concrete Company, obtained its judgments against Cash Whitman, Inc., August 27, 1964 (almost a year after the October 31, 1963, transfer) for the sums of $173.85 and $4119.38. There was a magistrate court judgment in October 1962 against Cash Whitman for $159.45, and one in June 1963 for $40.45, but these were satisfied after transcripts had been filed in the office of the circuit clerk. RSMo 1959, §§ 517.-770, 517.780, V.A.M.S. There were other magistrate court judgments in November and December 1963 and in 1964 other judgments ranging from $421.80 to $1459.-43 and these remain unsatisfied. In 1965 Cash Whitman, Inc., went into voluntary bankruptcy and there were then no assets of value, $8133.77 in unsecured claims and a total indebtedness of $44,295.93. And, incidentally, Mr. Whitman's personal estate was closed in probate court and there were no assets of value.

■ In these circumstances the appellants contend that "upon the law and the evidence" the court erred in not setting aside the deeds of October 31, 1963, and May 6, 1964 as conveyances made in fraud of creditors. The appellants first point to the eight or nine badges of fraud enumerated in Bostian v. Bono, Mo., 322 S.W. 2d 813 and insist that by reason of the concurrence of several of these factors the conveyances were fraudulent as a matter of law. Some of these badges, admittedly, are present, for example, conveyances to near relatives of the company president and a transfer of all of the company's remaining assets of value. On the other hand, several of these suspicious badges are not present—it does not appear with certainty that the consideration was shockingly inadequate, that there were not explanatory circumstances or even that in one sense the company was insolvent, and finally the circumstances in that case are not comparable to the circumstances here. And, second, the appellants say that the assets of an insolvent corporation constitute a trust fund for the benefit of creditors and that a corporation has no right as against its creditors to apply its assets "in payment of a private debt of its officers." As to this latter statement a mere reference to the record refutes the claim that the company's obligations or debts to Mrs. Whitman were her "private debts." There was no refutation of the proof that her advances from her life insurance and other means were to pay company debts. That is the distinguishing factor in one of the cases principally relied upon by the appellants, National Tube Works v. Ring Refrigerating & Ice Machine Co., 118 Mo. 365, 22 S.W. 947. That was a jury-tried case and the appeal was concerned with instructions, one of which submitted whether an advance was to liquidate an officer's personal indebtedness to the company. It was in this connection that the court said that a corporation could not use its property "in payment of the private debts of its officers." Such a case was Shields v. Hobart, 172 Mo. 491, 72 S.W. 669.

■ On the other hand, the respondents in these circumstances rely upon the

Missouri rule that a corporation "though insolvent, may prefer some creditors to others, even though such creditors are among the directors of the corporation." Foster v. Mullanphy Planing Mill Co., 92 Mo. 79, 87, 4 S.W. 260, 261; Schufeldt v. Smith, 139 Mo. 367, 40 S.W. 887; Butler v. Harrison Land & Mining Co., 139 Mo. 467, 41 S.W. 234. The rule applies despite the trust fund theory (Mooney v. C. B. & Q. R. Co., 125 Mo.App. 651, 103 S.W. 119) and the mere fact of a subsequent assignment for the benefit of creditors does not invalidate the transfer. Alberger v. National Bank of Commerce, 123 Mo. 313, 27 S.W. 657. There are two views on this subject and it is said of the majority view (at least thirty-one jurisdictions) that the "rule is merely applied common honesty" (15A Fletcher, Cyclopedia of Corporations, §§ 7468, 7469, pp. 229, 230) while the minority view (approximately seventeen jurisdictions) has been soundly condemned, even "severely condemned by some judges." Fletcher, § 7470, p. 237. The annotators view the Missouri rule, with modifications, as an exception: "In a few jurisdictions it seems that a corporation which is actually insolvent, but which is a going concern and has not committed an act of insolvency, may prefer one of its directors who is a creditor of the corporation." Annotation 19 A.L.R. 320, 349. But this case need not be made to turn on this narrow view alone, and the doctrine may be reexamined when the exigencies of the case compel it. As indicated, it was not conclusively established that Cash Whitman, Inc., was insolvent on October 31, 1963, and the court's general finding may be treated as supporting that view. But even Fletcher says "there is no sound reason why directors should not assist a corporation in need of assistance, by lending money or credit and taking security therefor." Fletcher, Sec. 7475, pp. 244–245. Mrs. Whitman did not directly take security for her advances but her son and daughter-in-law assumed the indebtedness of the first deed of trust and made the payments required to prevent its foreclosure. "Whatever may be the law in

other jurisdictions, the rule is well settled in this State that stockholders or directors of a corporation can lawfully lend money to the company, and the company can lawfully prefer them, by transferring enough property of the company to fairly and reasonably secure or pay them what the company owes them." Heidbreder v. Superior Ice & Cold Storage Co., 184 Mo. 446, 453, 83 S.W. 466, 468; Russe & Burgess v. Miesner Lumber & Mfg. Co., Mo.App., 243 S.W. 353.

■ The appellants contend in any event that the court erred in not holding that their rights came ahead of the rights of the American National Bank. The appellants' claim in this respect is somewhat confusing, at one point they mention the $2500.00 indebtedness and second deed of trust given by Glenn and Janet. In their conclusion, citing Batavia v. Wallace, 102 F. 240, a jury case, the appellants "further contend that the American National Bank *had notice or should have had notice* from its dealings of the parties and its own records, that the conveyances of October 31, 1963 and May 6, 1964, were in fraud of creditors, so that *the lien under the second deed of trust should be junior to the rights of the creditors of the bankrupt estate."* (Emphasis supplied.) The bank filed a separate answer but it does not appear from this record that the parties in fact seriously and separately tried this issue. If so, it may only be implied from the court's general finding that this issue was also found against the appellants. Perhaps the appellants' own statement refutes the claim, while Glenn said that the bank "completely understood the transaction between himself and his wife * * * and Cash Whitman, Inc., and the consideration therefor," it does not appear, as they argue, that "the bank had reasonable cause to believe the corporation to be insolvent. It is bound by its own records." Other than the indicated stipulated statement of Glenn it does not appear just what the bank may or may not have known. Certainly there isn't anything in this record that would

subject the bank's first deed of trust to the claims of common creditors, or even these judgment creditors. And only in theory or upon the opinion of experts has it been established that there is any value in 2401 North Belt in excess of the bank's claims. In any event, upon this record there is no basis for subordinating the bank's claims to those of other creditors.

And, for the indicated reasons, the judgment is affirmed.

STOCKARD and PRITCHARD, CC. concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

FINCH, P. J., EAGER, J., and JENSEN, Sp. J., concur.

DONNELLY, J., not sitting.