SCHUFELDT *et al., Appellants,* v. SMITH *et al.*

Division One, May 25, 1897.

1. **Corporations**: ASSUMPTION OF PARTNERSHIP DEBTS: PREFERRED CREDITORS. A partnership was converted into a corporation with the same members. The stockholders agreed among themselves that the corporation would take the assets of the firm and assume all its liabilities. This agreement was immediately followed by the corporation taking all the firm's assets and using and disposing of them in its business; it also put on its books as its own liabilities the debts of the partnership, some of which it paid in full, on others it paid the interest and for others it gave its note. *Held,* that such agreement makes such debts the liabilities of the corporation, it appearing that only a part of the partnership assets were used in paying for the stock of the corporation; and *held* further that when the corporation became insolvent, it could by trust deed prefer one of such partnership debts to the exclusion of its general creditors, though such debt had for many years been a partnership note given for money loaned to the partnership, and though the members of the partnership, now the stockholders, were severally liable as partners for the payment of the note.

2. ——: ——: STATUTE OF FRAUDS. An agreement with the part-nership by a corporation to pay its debts in consideration of its assets, followed by a delivery of its assets to the corporation, is not a promise to pay the debts of another within the statute of frauds, the partnership members and the corporation stockholders being the same.

3. ——: ——: EXISTING DEBTS. The managing officers of the insolvent corporation can not, as against its existing creditors, lawfully appropriate its assets to the payment of their private debts.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Hall & Pike, Stauber & Crandall,* and *Johnson, Rusk & Stringfellow* for appellants.

(1) The deed of trust in question here is *prima facie* fraudulent, and the burden was on defendants to show that the debts of the creditors secured in the deed were valid debts of the corporation. See former opinion in this case, 131 Mo. 280. (2) A corporation can not, as against its creditors, apply its assets in satisfaction of debts of persons whom it is under no obligation to pay, and the inhibition extends to their use in the payment of the private debts of its officers. *National Tube Works v. Ring Refrigerator & Ice Machine Co.,* 118 Mo. 365. (3) An absolute agreement on the part of the corporation would be required to charge even the corporation, this being not a case of the consolidation of two corporations, nor the absorption of one by another. *Pennison v. Railroad,* 67 N. W. Rep. 702. At the organization of this corporation, the capital stock was paid up by property belonging to its stockholders, which had constituted part of the assets of the firm, of which the stockholders were members. This is all. In such a case, the property would be taken of course, subject to any lien actually existing

against it, and not subject to any other claims against the former owners of the property. (4) It is well settled in this State that partnership creditors have no lien on partnership effects. Their rights must be worked out through the equities of the partners, and these may be waived. *Sexton v. Anderson*, 95 Mo. 381; *Reyburn v. Mitchell*, 106 Mo. 365; *McDonald & Co. v. Cash & Hainds*, 57 Mo. App. 536. From this it would seem to follow that an agreement binding on the corporation would be necessary to give the directors power to prefer firm claims.

*H. K. White* for respondent The Walsh Mercantile Company.

*James F. Pitt* for respondent Ferdinand Lutz.

(1) Where partners organize a corporation and transfer to it the firm's business and assets, the corporation issuing its stock in consideration of such transfer, the partnership liabilities attach to the new concern by operation of law, and the partners simply acquire a new name under which they may be sued, and by which they may assign the corporate property to pay or secure those liabilities. When the corporation is sued at law, in the absence of an express agreement to pay the debts, it may defend in equity that the firm was insolvent and be relieved *pro tanto*, but this does not alter the liability to respond at law to the full amount of the assets received. *Dean v. LaMotte Lead Co.*, 59 Mo. 524; *Slattery v. Transportation Co.*, 91 Mo. 217; *Bank v. Branch-Crookes Saw Co.*, 104 Mo. 425. (2) The preference to the third class creditors, and to each one in that class, is to be treated as though made by a separate instrument. *Woodson v. Carson*, 35 S. W. Rep. 1005; *Jacobi v. Jacobi*, 101 Mo. 507; *Bank v. Moran Packing Co.*, 39 S. W. Rep. 71.

(3) The record discloses, by plaintiff's own showing, an express agreement between the partners and the corporation to the effect that the latter should pay the debts of the former; when the corporation took the assets it was bound to know the terms upon which it got them, and it is immaterial what percentage of the capital stock was considered paid in the transaction. Nor could the corporation repudiate this agreement and still hold the assets.

*James W. Boyd* for respondent James Walsh, administrator of the Conrad estate.

(1) These two promissory notes were executed in good faith by the James Walsh Mercantile Company, for money borrowed by it from the estate of Thomas Conrad, deceased; and this deed of trust, so far as these debts are concerned, is valid. *Carson v. Woodson*, 35 S. W. Rep. 1006; *Schufeldt v. Smith*, 131 Mo. 280. (2) The appellants have elected not to accept the provisions of said deed of trust. They have repudiated it and now claim that it is fraudulent and void. They are not judgment creditors; they have no lien on or special interest in the property. Hence, their petition fails to state a cause of action and they have no legal standing in this court. *Bank v. Moran Packing Company*, 138 Mo. 59; *Reyburn v. Mitchell*, 106 Mo. 365. (3) But the appellants can not claim under a deed and at the same time attack it, or any part of it. They must accept said deed *in toto* or reject it *in toto*. They can not claim under the deed and at the same time attack and defeat provisions made by it for the benefit of other creditors. *Valentine v. Decker*, 43 Mo. 583; *Drew Glass Co. v. Baldwin*, 27 Mo. App. 44; *Frierson v. Branch*, 30 Ark. 453; *Hasenritter v. Kirchhoffer*, 79 Mo. 239; *Sampson v. Shaw*, 19 Mo. App. 274–282;

*Stoller v. Coates,* 88 Mo. 514–522, 523; *Eppright v. Kauffman,* 90 Mo. 25–28. (4) If there is one valid claim secured in said deed of trust, without any fraud on the part of the holder of said claim, then, said deed of trust can not be annulled, and appellants can not prevail in this suit. *Carson v. Woodson,* 35 S. W. Rep. 1006; *Hardcastle v. Fisher,* 24 Mo. 75.

*S. P. Huston* and *Brown & Pratt* for respondent Smith.

(1) There is neither allegation or proof of any fraudulent intent or conduct on the part of the trustee. The only charge is that he knew the corporation was insolvent when he accepted the trust, but of this there is not a scintilla of proof. R. S. 1889, sec. 8685. (2) The plaintiffs appellants can not as simple general creditors, without lien or specific interest in the property, attack the deed of trust. Aside from the rights derived to them through that deed, they are completely and conclusively outside the jurisdiction of a court of equity. *Bank v. Moran,* 138 Mo. 59; *Mullen v. Hewitt,* 103 Mo. 639; *Mellier v. Bartlett,* 106 Mo. 381; *Reyburn v. Mitchell,* 106 Mo. 365. (3) We concede that if they claim under the deed they may by virtue of their rights as creditors secured thereby, attack any claim thereby secured to any other person, but they can not attack the very deed under which alone they must rely to maintain themselves in court as an entirety—to set it aside as to all secured thereby. *Gibson v. Lyon,* 115 U. S. 439; *Bissell v. Foss,* 18 Wall. 252; *Austin v. Loring,* 63 Mo. 19. (4) Under the pleadings and proof the court would be required as a matter of law to sustain the deed of trust. *First.* Because if plaintiffs as general creditors only prosecute this bill, they must fail and in that event the deed stands. *Second.* Because

if they avail themselves of the right conferred by the deed, they can not at the same time attack it as wholly void. *Third.* Because even conceding, which we do not, that any of the claims secured by the deed were fraudulent, yet such concession would only cancel such claims and leave the trust deed in force as to the other secured claims to be administered according to its terms except as to the canceled claims.

MACFARLANE, J.—On the eighteenth of March, 1893, the James Walsh Mercantile Company, a corporation under the laws of this State, which had since 1887 been engaged in the business of wholesale merchants in the city of St. Joseph, under a resolution of the board of directors, executed to defendant Smith, as trustee, a deed of trust on all its property to secure its creditors. The deed was drawn in pursuance of the resolution under which the debts and liabilities were divided into five classes and preferences given to the creditors in the order of classification. The general mercantile creditors of the concern were placed in the fifth class, and the assets are insufficient to pay the debts in the preceding classes. These creditors sue to set aside the deed as being fraudulent. On the first trial the trial court found, as a fact, that the corporation was insolvent when it executed the deed of trust, and held, as a matter of law, that an insolvent corporation could not prefer some of its creditors, and therefore entered a decree annulling the deed of trust. From that decree defendants, the trustee and preferred creditors, appealed and the judgment was reversed and a new trial was ordered. The opinion, accompanied by a statement of the facts, will be found fully reported in volume 131, page 283, of Missouri Reports.

When the case went back to the circuit court an amended petition was filed, the case was retried, and a

judgment rendered for defendants, and plaintiffs appeal.

Upon this trial it was shown that for some years prior to the organization of the corporation, James Walsh & Company, a partnership composed of James Walsh, John Byrne, and Thomas Culligan, were engaged in business at St. Joseph as wholesale merchants. On the seventh of July they organized a corporation with a capital stock of $150,000 to conduct the same line of business. At the first stockholders' meeting the following resolution was adopted:

"Be it remembered that on Friday, July 8th, 1887, in pursuance of a notice regularly given by James Walsh, the stockholders of the James Walsh Mercantile Company met at the office of Thomas Culligan in St. Joseph, Missouri, there being present James Walsh, John Byrne and Thomas Culligan. On motion of Mr. Byrne, James Walsh was elected president and S. A. Shoemaker was elected secretary of the meeting and of the corporation. Mr. Culligan moved that the corporation buy of James Walsh & Company their entire stock in trade as shown by their invoice taken July 6th, 1887, including fixtures, safe, other personal property, and also their real estate at prices fixed in the invoice, and in addition, sufficient of their accounts to be guaranteed by said firm to make the sum total of one hundred and twenty thousand dollars ($120,000). Seconded and carried."

At the time the corporation was organized the entire assets of the partnership, as estimated, amounted to about $259,000. This included the stock of merchandise on hand amounting in round numbers to about $50,000, the real estate, valued at $8,500, and the debts due the firm. In the latter item was included a suspense account amounting to about $140,000. The debts of the firm amounted at the time to about

$125,000, some of which are included in the debts secured under the deed of trust in question, and placed in the third and fourth classes.

When the corporation commenced business it took possession of all the assets of the partnership, out of which it realized about $165,000. It also carried on its books all the debts of the old firm, some of which it paid, some it renewed by giving its own notes, and some remained in their original partnership form until the deed of trust was executed. On these old firm debts it paid the interest annually. Witnesses testified to an oral understanding of the incorporators at the time the corporation was organized that the corporation should take the assets of the partnership and assume its liabilities.

It appears that several of the notes, preferred under the deed of trust, were secured by the personal indorsements of members of the board of directors, and some were originally executed by the partnership, and had not been changed.

As stated in the opinion on the former appeal, the resolution of the board of directors, directing the execution of the deed of trust, was adopted by the votes of the members thereof who were debtors of the corporation, and the debts for which they are bound were placed in the third and fourth classes and were thereby given a preference over the debts of plaintiffs, who are general mercantile creditors.

On the former appeal it was held that the board of directors, if acting in good faith, had the right to give a preference to one creditor, or class of creditors, over another, though the corporation was at the time insolvent, and that the deed of trust was not fraudulent in law, from the mere facts that the preferences were given and the corporation was at the time insolvent.

It was also held that a director of a corporation

Schufeldt v. Smith.

had the right to vote a preference to himself provided the debt preferred was a *bona fide* obligation of the corporation; but that, in such cases, the burden of proving that the secured debt is fair, honest and justly due, rests upon him.

It appears from the evidence introduced at this trial that, at the date of the organization of the corporation, defendant Lutz held two notes executed by the partnership, aggregating $14,000. It was shown that these notes were given for money loaned the firm of James Walsh & Company which was used in the partnership business. No change in the notes were made after the partnership ceased to do business. These notes were secured by the deed of trust in question and were given a preference over the debts of plaintiffs.

Plaintiffs insist that these notes are the obligations of the partnership, and not of the corporation, and that the application of the corporate assets to their payment as is attempted by the deed of trust, would be a fraud upon the creditors of the corporation, and the deed of trust is therefore void as to plaintiffs and should be set aside. There can be no doubt that the notes were originally the obligations of the partnership and, unless released therefrom, that each partner is liable for their payment. It is also true that the corporation is not liable on the notes unless it has assumed their payment. The principle may be accepted as well established that the managing officers of an insolvent corporation can not, as against its existing creditors, lawfully appropriate its assets to the payment of their private debts.

If, then, the Lutz notes were not the legal obligations of the corporation, the deed of trust, in so far as it undertook to secure them, is fraudulent. *Hall v. Goodnight*, 37 S. W. Rep. 916; *National Tube Works Co. v. Ring R. & I. Co.*, 118 Mo. 365. If the notes were

assumed by the corporation and became legal obliga-
tions, then the board of directors had the right to secure
them with the corporate assets in preference to other
creditors, though the directors themselves, as partners
in the old firm, are also individually liable. *Milling
Co. v. Commission Co.*, 128 Mo. 486; *Schufeldt v.
Smith*, 131 Mo. 283.

The question then is, did the corporation assume
the payment of these notes so as to make them its valid
obligations? It is true there was no agreement between
the corporation and Lutz by which a novation was
created, nor does the fact that the members of the
partnership and the stockholders of the corporation
were the same persons imply an assumption by the
corporation of the partnership liabilities. The cor-
poration, when formed, and the pre-existing partner-
ship, were not identical, though composed entirely of
the same persons. *The Georgia Company v. Castleberry*,
43 Ga. 188; *McLellan v. Detroit File Works*, 56 Mich.
583.

But we are of the opinion, considering the entire
evidence together, that at the time the partnership
was converted into a corporation, there was an under-
standing and agreement among those making the
change that the corporation should take all the assets
of the partnership into its business and assume all its
liabilities. James Walsh, the head of the firm, and
the president of the corporation, testified that there
was a verbal agreement to that effect, and his evidence
is corroborated by the books of the corporation and
the manner in which it conducted its business. It
appears from the books that immediately on the or-
ganization of the corporation, it took into its posses-
sion all the assets of the partnership and thereafter
disposed of and used them in its business. It also
placed upon its books as liabilities all the debts of the

partnership. Some of these obligations it paid in full; some it settled by substituting its own notes, and some, including the Lutz notes, it recognized by the regular payment of interest thereon up to the date of the deed of trust.

But it is said that the assets of the partnership were used in payment for the stock of the corporation and there was, consequently, no consideration for the agreement to assume the partnership liabilities.

The assets of the partnership transferred to the corporation amounted, nominally, to $259,000 and only $120,000 was used in paying for the stock. This left a balance of $139,000 received by the corporation after payment for the stock while the liabilities of the partnership amounted to about $125,000. It is true the assets included a large suspense account which was almost valueless and only about $165,000 was realized by the corporation from all the assets received. The corporation evidently made a bad bargain, but that does not relieve it from the obligations assumed.

It is true the records kept by the board of directors and stockholders do not show a purchase of all the assets of the corporation, but we do not think it necessary that they should have done so. It is not necessary that every business transaction of such a corporation should be directed by the formal action of the stockholders or board of directors. Such a course would be wholly impracticable.

Nor does the transaction fall within the statute of frauds which requires the promise to pay the debt of another to be in writing. The promise of the corporation was to pay its own debt to the partnership by assuming to pay the debts the partnership owed to others. It was not the promise to pay the debt of another within the meaning of the statute of frauds. *Holt v. Dollarhide*, 61 Mo. 433; *Flanagan v. Hutchinson,*

47 Mo. 237.   We are of the opinion that the Lutz notes are the *bona fide* obligations of the corporation and there was no fraud in the preference given them under the deed of trust.

Thomas Culligan, one of the partners, whose interest was estimated at $50,000, only took $35,000 of the stock of the corporation in payment therefor, though his entire interest was transferred to it.   The balance, to wit, $15,000, he claimed to be a debt against the corporation.   Culligan afterward died, and on February 10, 1890, the attorney representing his estate appeared before a meeting of the stockholders, and offered the following resolution which was rejected:   "Resolved, That the corporation known as the James Walsh Mercantile Company, having received the assets of the partnership of James Walsh & Co., does hereby agree to assume and pay all the indebtedness of James Walsh & Co."

This is the only record found upon the books of the corporation referring to the partnership debts and this was not made for some two years after the conversion of the partnership into a corporation.   If the corporation assumed the payment of the partnership debts at the time it was organized, as we have found to have been the case, it could not repudiate its agreement by a resolution adopted after the assets of the partnership had been converted to its own use.

But it appears from the evidence that the rejection of the resolution was not intended as a repudiation of the obligation to pay the partnership debts, but as a denial of its liability for the claim made by the Culligan's estate.   There seems to have been some antagonism between the James Walsh Mercantile Company and the attorney for the estate, and the reason given for rejecting the resolution was that the stockholders did not intend the attorney should "run the

meeting." The rejection of this resolution is not sufficient to overcome the positive and circumstantial evidence that the corporation assumed the payment of the partnership debts.

The evidence upon this trial satisfies us that the debts secured by the deed of trust are the *bona fide* obligations of the corporation and no reason appears for interfering with the judgment of the circuit court. Judgment affirmed. BARCLAY, P. J., ROBINSON and BRACE, JJ., concur.