HATTIE B. PINET, v. H. L. PINET AND MARY K. PINET, HUSBAND AND WIFE.—191 S. W. (2d) 362.

Kansas City Court of Appeals. December 3, 1945.

*A. E. Watson* and *Martin J. O'Donnell* for appellants.

502

*S. L. Harris, Arthur S. Brewster, Lloyd S. Miller* and *William A. Gray* for respondent.

CAVE, J.—This is a suit on a promissory note. Defendants' answer is a general denial and a counterclaim. At the close of plaintiff's evidence defendants offered an instruction directing a verdict for them, which was overruled. There was no further evidence and the court gave an instruction directing the jury to return a verdict for plaintiff on the note and on the counterclaim. Judgment was entered accordingly, and defendants appeal.

The evidence discloses that on August 11, 1936, defendants executed the note in suit, payable to Frank L. Pinet or order, and due five years after date. The defendants at all times here involved resided in Missouri and Frank resided in Shawnee County, Kansas. On June 15, 1941, he died intestate in that county, leaving his widow, the plaintiff, and five children as his only heirs.

No administration was had on his estate in Missouri or Kansas. But Section 29-2250, of the Kansas Statutes, provides that whenever a person has been dead for more than one year and has left property or any interest therein and no will has been admitted to probate nor administration had in that state, then any person interested in the estate may petition the court of the county of decedent's residence to determine the descent of any property owned by decedent. Section 59-2251, of the same code, provides that upon proof of such petition the court shall enter its decree assigning the property to the persons entitled thereto at the time of the decedent's death pursuant to the law of intestate succession then in force.

Under authority of such statute the widow (plaintiff in this case), on August 12, 1942, filed her petition in the probate court of Shawnee County and the court entered a decree ordering "that the above described real estate *and all other property within the state of Kansas, and owned by the decedent at the time of his death . . . be and the same is hereby assigned to and vested in the following named persons in the following proportions; . . .* (Italics ours). Then follow the names of the widow and five children; the widow being assigned a one-half interest and each child a one-tenth interest. About a year prior to such order, the children had executed what is called a "Bill of Sale and Assignment of Personal Property," conveying to plaintiff their interest in and title to all the *personal property* owned by Frank Pinet at the time of his death.

Plaintiff claims to be the owner and holder of the note in suit by virtue of such probate order and assignment. Defendants deny that such order and assignment convey any title to her.

A number of assignments of error are made, but concededly the first vital question is whether the plaintiff is the legal owner and holder of

the note. Defendants (appellants) contend that since they at all times resided in Missouri, the *situs* of the debt (the note) was in Missouri and not in Kansas and, therefore, the probate court decree did not and could not have the effect of conveying title \to property so situated in this state. If that contention is sound, it will not be necessary to discuss other assignments of error.

Our courts have uniformly held that debts due from a Missouri debtor to a nonresident decedent are *assets* in Missouri. [In re Estate of Henry Ames, 52 Mo. 290; McCarty v. Hall, 13 Mo. 480; Becraft v. Lewis, 41 Mo. App. 546; Miller v. Hoover, 121 Mo. App. 568; Crohn v. Clay County Bank, 137 Mo. App. 712; Harnett v. Langan, 282 Mo. 471, 490.]

A promissory note is merely evidence of a debt, and is not itself the debt. [Leavell v. Blades, 237 Mo. 695.]

Since the early decision in McCarty v. Hall, *supra,* it has been uniformly held that a foreign administrator cannot, himself maintain an action upon a note given by a person living in this state to his intestate; nor can such administrator endorse said note to a third person so as to give such endorsee a right of action in his own name. In disposing of the question, the court said, (484) : "In this case, the debt due by Jacob Hall to Edward Wilbourn—Hall residing in this State and Wilbourn dying in Texas— . . . never was assets in the hands of the administrator in Texas, *but remained as goods and chattels in Missouri*: . . . " (Italics ours.) The court quotes with approval pertinent language from a decision of the Supreme Court of Massachusetts in Jones v. Godwin, 3 Mass. R, 514; "Debts due the testator, at the time of his death, from persons residing in other states, are placed by law on the same ground as goods and chattels belonging to him and *being in another state*. Over these she, as executrix, deriving her authority under the law of Massachusetts, has no control. . . . " (Italics ours.) In Becraft v. Lewis, *supra,* this court said, (551) : "The payor of the note resided in Missouri and, therefore, the *situs* of the asset was in this state notwithstanding the note itself was in Iowa." The other cases, cited above, fully support this doctrine.

Plaintiff cites and relies on the case of Morton v. Hatch, 54 Mo. 408. In that case the Supreme Court was discussing the question of whether the trial court committed error in sustaining a demurrer to the petition. The petition alleged that one Morton died testate in the State of Kentucky; that his will had been probated and his estate fully administered in that state, and the executor discharged; and under and by virtue of his last will and testament plaintiff was the sole legatee and devisee and entitled to all of his property; that there were no debts or liabilities due or accruing from the testator or his estate to any person in the State of Missouri. The court properly held that the petition stated a good cause of action because the plaintiff

was claiming the debt under the will of the decedent. In arriving at that conclusion, the court quotes with approval an opinion by Judge Story in Trecothick v. Austin, 4 Mason's C. C. 16, wherein he said: "A will bequeathing personal estate conveys that property wherever it may be situated, if the will is made according to the laws of the place of the testator's domicile. And it has never been supposed that it was indispensable to the assertion of a title derived under such will, that there should be a probate in every place where such property was situated. It is only necesary where a party sues for it, not in his own right, but as the personal representative of the deceased." This opinion in no way conflicts with the views above expressed. It does not change the rule governing the *situs* of personal property such as is involved here.

But plaintiff urges that we must give full faith and credit to the judgment of a court of a sister state. Under our view of the issue, that question does not confront us. The judgment of the probate court of Kansas purports to assign and convey title *only* to property *located within the State of Kansas*, and since we conclude that the debt now in controversy was not *property* within that state, the decree could not convey and did not purport to convey title to any property situated in Missouri. It is held that, "The laws and courts of a State can only affect persons and things within their jurisdiction and both as to the administrator and the property confided in him, the judgment in another State is *res inter alois acta* and is not even *prima-facie* evidence of the debt. . . . " [First National Bank v. Dowdy, 175 Mo. App. 478, 484; 27 L. R. A. 101, 111.]

Our probate code, Article 10, chapter 1, Revised Statutes Missouri 1939, provides a method for administration of estates of nonresidents; and Sec. 272 thereof, as amended by the Laws of 1943, page 129, authorizes, under certain conditions, the transfer, payment or delivery of certain debt obligations located in this state, but no claim is made that the procedure required in this article was complied with or that plaintiff is asserting any right under said Sec. 272.

We are also of the opinion that the plaintiff did not acquire title to this debt by the bill of sale and assignment executed by decedent's children. The long-time rule in this State has been and is that the legal title to the personalty of a decedent passes primarily to his executor or administrator, from whom the heirs or legatees receive it through the process of administration. [Odom v. Langston, 173 S. W. (2d) 826, 351 Mo. 610, 624.] At the time the heirs executed their assignment they had no (legal) title to convey. [See State ex rel. v. Moore, 18 Mo. App. 406.]

We conclude that the plaintiff was not the legal owner and holder of said *debt* at the time she filed this suit, and the trial court erred in directing verdict for her.

It is unnecessary to discuss other questions presented in the briefs. The judgment should be reversed. It is so ordered.

All concur.

## On Rehearing.

BLAND, P. J.—The foregoing opinion, by Cave, J., handed down on the original submission of the case, is hereby adopted by the Court, with the following additions:

It is insisted that plaintiff has legal title to the note in suit even if the decree of the Kansas Court is ignored; that she acquired such title by virtue of the "Bill of Sale and Assignment of Personal Property" mentioned in the original opinion, which constituted a family settlement. It was said in Richardson v. Cole, 372, 378, (quoting from a Pennsylvania case:) "While the mere legal title passes to the administrator, the equitable descends upon the parties entitled to distribution. If there be no creditors, the heirs have complete equity in the property, and if they chose, instead of taking letters of administration, to distribute it by arrangement made and executed among themselves, where is the principle which forbids it? The parties to such an arrangement, executed, would be forever equitably estopped from disturbing it, as amongst themselves, upon the most familiar principles of justice. . . . If there be no creditors in this case, the recovery of the value of the cattle would be only for the purpose of distribution among the heirs; but this they have done themselves, by an appropriation of the value already, and thus is accomplished what can not be done over again without breaking up the arrangement, and without manifest injustice to the defendant".

The trouble with plaintiff's contention is that the present case was not pleaded or tried upon the theory of "family settlement" or "domestic distribution". There is no allegation in the petition that that there were no debts of deceased, nor was any such issue tried (at least as to any debt other than that arising under the allegations set forth in the counterclaim.) The mention in the petition of the "Bill of Sale and Assignment of Property" was to supplement the decree of the Kansas Court which declared the various interests of plaintiff and her children, in the assets therein named, as the next of kin of Frank L. Pinet, deceased. "The Bill of Sale and Assignment of Property" was pleaded in connection with the decree for the purpose of showing that the various interests of the children, as declared in the decree, had been conveyed to plaintiff.

Plaintiff insists that the court properly instructed the jury to return a verdict in her favor on defendants' counterclaim.

The counterclaim is founded upon the following circumstances: Frank L. Pinet and the defendant Armond L. Pinet, together with Felicie E. Zehner, Grace E. Jones and Eli P. Jones were brothers and sisters and children of Frank B. Pinet, deceased, and Felicie M. Pinet, was his widow. The father, although heavily in debt, left

several tracts of real estate situated in Pottawatomie County, Kansas. On August 25, 1936, an agreement was entered into by said persons, described therein as the heirs at law, legatees and devisees of Frank B. Pinet, deceased, concerning the latter's estate. It was provided in the agreement that certain of the real estate of deceased be conveyed to a lumber company in settlement of the debt of deceased to it; that the deceased owed Frank L. Pinet $3072.00, and that the parties convey certain of the real estate of deceased to Eli B. Pinet upon the payment by the latter of $800.00 to be credited upon said $3072.00 debt; that the parties convey to Frank L. Pinet the balance of the real estate of the father; that Felicie M. Pinet, the mother, convey all of her real estate to Frank consisting of the "Home Place" of approximately 21 acres; that Frank should sell the real estate conveyed to him, except the "Home Place" and "that from the proceeds of such sale and/or sales, after paying the necessary costs and expenses and taxes and giving credit for any and all income derived therefrom, the balance shall be applied upon the indebtedness of $2272.00 and accrued interest, and the said Frank L. Pinet and Hattie B. Pinet, his wife, agree that they will permit Felicie M. Pinet to live upon the home place and that she shall have the rents, issues and profits arising therefrom from which she shall, if the income be sufficient, pay her living expenses and taxes, and if not, the said Frank L. Pinet agrees to advance to the said Felicie M. Pinet such amount as may be necessary from time to time to pay the taxes and/or provide means for the support and comfort of the said Felicie M. Pinet during the remainder of her life, and that upon her death, the said home place shall be sold as soon as practicable at the best price obtainable, and after deducting the balance then due the said Frank L. Pinet upon the indebtedness heretofore mentioned and reimbursing him for any and all advancements which he shall have made as herein contemplated, the balance shall be divided among and paid in equal parts to Armond L. Pinet, Felicie Zehner and Grace E. Jones, share and share alike, provided however that said Armond L. Pinet and Mary Pinet, his wife, shall have paid to the said Frank L. Pinet the sum of 437.92, being the amount represented by a note, (the note in suit) dated August 1, 1936 bearing interest at the rate of 6% per annum, and if said note shall not have been paid, then and in that event, the share and part to which Armond L. Pinet is entitled shall be applied on said note and his *pro rata* share over and above the amount necessary to pay said note shall be paid to him".

The answer contains no plea of payment, but in the counterclaim damages are asked for an alleged failure of Frank L. Pinet to comply with the agreement; that said Pinet: "sold the said home place and failed to carry out the terms of the said contract to advance sufficient funds to support Armond L. Pinet's mother in comfort or at all; that said plaintiff also breached said contract in failing to sell the

assets of said defendant Armond L. Pinet's father and applying the proceeds as directed in said contract as provided for in said contract; that said defendant Armond L. Pinet's interest in his father's estate and in said home place exceeded in value the sum of three thousand ($3,000.00) dollars; that said promissory note has not been as provided for in said contract nor has said defendant Armond L. Pinet received anything from his father's estate; that said plaintiff and others obtained the lands referred to in the said contract from these defendants by means of the representations and agreements therein contained; that by reason of the premises, defendants have been damaged in the sum of two thousand five hundred ($2,500.00) dollars, for which sum and costs they pray judgment''.

There is no contention that the issues raised by the counterclaim are not triable in this action.

The evidence shows that the residence, on the ''Home Place'', was uninhabitable and was being used as a granary and that the mother is living elsewhere; that defendants were agreeable in her moving and that Frank L. Pinet supported her in his life time and that she is now being supported in a proper manner. The real estate of the father, including the ''Home Place'' has been sold. There is some evidence, of an indefinite character, on the part of the defendants that the property turned over to Frank L. Pinet was of a value high enough to render their part sufficient to discharge at least a part of the note in suit. Plaintiff's evidence is to the contrary and that defendants have nothing coming to them on the note.

The contract contemplated that Frank was to be under expense in handling his father's estate and defendant, A. L. Pinet, (his wife was not a witness) testified that he did not know ''how much the estate of Frank P. Pinet owed the Frank L. Pinet estate. I suppose it was something''. In addition to this, the burden was upon defendants to prove that the real estate of the father was not sold for ''the best price obtainable'', regardless of what may have been the actual value, and there is no allegation in the counterclaim that the property was not so sold. There is no evidence to indicate that defendants had anything coming to them to apply on this note in view of the actual amount that the property brought. There is no evidence of any violation of the contract relative to the support of the mother of which defendants can complain.

There was no proof that defendants have been damaged in any way by the failure to give them credit on the note for the part coming to them, if any, from the sale of the real estate. Of course, if the contract was in fact breached defendants might be entitled to nominal damages, but there is no evidence of any breach of the contract in the respects noted of which defendants can complain. The court properly directed a verdict for plaintiff on the counterclaim.

The judgment for plaintiff on defendants' counterclaim is affirmed. The judgment in her favor on her cause of action is reversed and the cause remanded.   [Franklin v. K. C. Public Service Co., 186 S. W. (2d) 546.]

All concur.