Richard M. SCOTT, Executor of Estate
of Eva Mae Potter, and James
Potter, Respondents,

v.

POTTER PLUMBING AND HEATING,
INC., a Missouri Corporation, Rollin
Potter and Lister Potter, Appellants.

No. 11296.

Missouri Court of Appeals,
Southern District,
Division Four.

March 17, 1980.

<br>

Gordon R. Boyer, Boyer & Ratzlaff, Lamar, for appellants.

Howard C. Gosnell, Jr., Christopher Hoberock, Ewing, Ewing, Carter, McBeth & Smith, Nevada, Richard M. Scott, Lamar, for respondents.

FLANIGAN, Chief Judge.

Plaintiff is executor of the estate of Eva Mae Potter, deceased. Defendant is Potter Plumbing and Heating, Inc., a Missouri corporation. The trial court, sitting without a jury, awarded plaintiff judgment in the amount of $31,821.39 against defendant on Count II of the petition. Although other disputes between the parties were adjudicated and there were additional parties,[1] only the award on Count II is involved in this appeal by the corporate defendant.

With respect to Count II the court found "that there existed from the date of incorporation of defendant corporation up to the date of death of Eva Mae Potter on April 8, 1977, an account labeled in the business records of the corporation, 'Noble and Eva Mae Potter Capital Account' which account represented an interest free loan from Noble and Eva Mae Potter to the defendant corporation. As a result of this loan the defendant corporation is indebted to the estate of Eva Mae Potter in the amount of $31,821.39."

Defendant contends that the trial court erred in awarding plaintiff $31,821.39,

which was the balance of the "capital account," for two independent reasons: (1) the minutes of the board of directors of defendant contain no authorization for the corporation to incur the loan; and (2) there is no note or other written instrument evidencing the loan. This court holds that, under the instant facts, neither reason is valid.

The corporation was organized in August 1971 and commenced business on October 1, 1971. The incorporators were Noble Potter, his wife Eva Potter, their son Lister Potter, and Noble's son Rollin Potter. Prior to the formation of the corporation Noble and Eva were partners doing business as Potter Plumbing & Heating Company. Rollin and Lister were employees of the partnership.

When the corporation was formed, it was authorized to issue, and did issue, 100 shares of stock with a par value of $100 per share. The original issue consisted of four certificates, one certificate for 26 shares to Noble and Eva, one for 26 shares to Eva and Noble, one for 24 shares to Rollin (and wife), and one for 24 shares to Lister (and wife).

Noble, Eva, Rollin, and Lister served as the four original directors of the corporation. Noble was the original president and Rollin was the original secretary. Whether Eva was an original officer is not shown but she became president following Noble's death.

At the trial both sides introduced voluminous records and tax returns reflecting the financial history of the corporation. All of the original assets of the corporation were transferred to it from the partnership. Those assets, on October 1, 1971, totaled $145,318.36. Significantly, on that date, the records reflect that among the liabilities of the corporation was this item: "Loans from shareholders—$43,069.88."[2]

---

1. An additional plaintiff was James Potter to whom the will of Eva Mae Potter bequeathed the "capital account." Additional defendants were Rollin Potter and Lister Potter.

2. The original entry in the "capital account" showed the amount of the loan to be $53,-069.80. Noble and Eva paid for the four stock certificates by the loan being reduced to $43,-069.80. In effect, Noble and Eva paid for the shares of Lister and Rollin as well as their own. The 8-cent discrepancy is neither explained nor debated.

From the day the corporation opened for business, until the trial in 1979, the loan, which may more accurately be termed an indebtedness arising from the sale of the partnership assets to the corporation, was carried on the corporate books as a liability of the corporation. Prior to the death of Noble in 1974 the corporate records showed that the loan was payable to Noble and Eva and it was treated, by the corporation and the other parties, as their joint asset. After Noble's death the loan was shown as payable to Eva and the parties treated it as her asset. Eva "considered the capital account as her money."

The corporation from time to time would pay, with corporate funds, Eva's (or Eva and Noble's) personal bills. When that was done, the balance of the loan was reduced.[3] Similar reductions were made when the corporation sold merchandise to Eva. On occasion, when Eva was entitled to receive her salary or dividends from the corporation, the corporation would not pay her by check but instead would credit the account.

█ It is not inherently improper or illegal for a corporation to purchase property or borrow money from its incorporators, *South Joplin Land Co. v. Case,* 104 Mo. 572, 16 S.W. 390, 392 (1891), or its stockholders, directors, or officers. *Heidbreder v. Superior Ice and Cold Storage Co.,* 184 Mo. 446, 83 S.W. 466, 468[1] (1904). "The rule is well settled in this state that stockholders or directors of a corporation can lawfully lend money to the company." *Land Red-E-Mixed Concrete Co. v. Cash Whitman, Inc.,* 425 S.W.2d 919, 923 (Mo.1968).

"It is the uniform rule that a director or officer of a corporation occupies fiduciary relation to the corporation and its shareholders. Since he occupies this relation he may not profit personally by virtue thereof at the expense of the corporation or the stockholders. . . . The relation alone of a director or officer of a corporation does not *prevent* the director or officer from doing business with the corporation at a profit. . . . The prohibition encompassed in the above general rules is directed at unconscionable and secret profits." *Ramacciotti v. Joe Simpkins, Inc.,* 427 S.W.2d 425, 431–432 (Mo.1968).

█ The loan to the corporation was neither unconscionable nor cloaked in secrecy. This was a small, family-held corporation and all of the participants were well aware of the initial transaction and its continuing history, all reflected in the corporate ledgers and tax returns. Defendants' answer did not plead the affirmative defense (Rule 55.08)[4] of fraud and neither in the trial court nor this court is there a contention that the corporation and other defendants were in any way deceived, cheated, or overreached. It is indisputable that the corporation was indebted to Eva's estate.

█ Defendant asserts that the obligation is not collectible for the reason that the corporate minutes do not show authorization for the corporation to obtain the loan. Although a corporation is required to keep minutes of the proceedings of its board of directors, § 351.215, par. 1, if the corporation has received the benefit of a loan, it may not defeat the claim of the creditor by a mere showing that the transaction was not recorded in the minutes. *Linwood State Bank v. Lientz,* 413 S.W.2d 248, 253[2] (Mo.1967); *Denny v. Guyton,* 327 Mo. 1030, 40 S.W.2d 562, 591[30] (banc 1931); *Shufeldt v. Smith,* 139 Mo. 367, 40 S.W. 887, 889[1] (1897); *Farmers & Merchants Bank v. Burns & Hood Motor Co.,* 295 S.W.2d 199, 202[2] (Mo.App.1956); *Leckie v. Bennett,* 160 Mo.App. 145, 141 S.W. 706, 710 (1911); *Kropp v. Hermann Brewing Co.,* 138 Mo.

---

**3.** After the death of Eva in 1977, in accordance with inter vivos arrangements made by Eva and Noble, 26 of their 52 shares were transferred to Rollin and 26 were transferred to Lister. At that time Rollin, Lister, and their wives constituted the board of directors and officers of the corporation and owned all of the shares. The loan, or "capital account," continued to receive the same treatment. Personal bills of Eva, incurred prior to her death, were paid by corporate funds and the account was debited accordingly.

**4.** All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

App. 49, 119 S.W. 1066[1] (1909); 19 Am. Jur.2d 565 Corporations § 1132; Fletcher Cyclo. Corps., Perm. Ed., Vol. V, § 2190, p. 631.

 Defendant asserts that the obligation is not collectible for the reason that there was no note or other written instrument evidencing the loan. A promissory note is merely evidence of a debt and is not itself the debt. *Pinet v. Pinet,* 239 Mo.App. 500, 191 S.W.2d 362, 363[2] (1945); *Mortgage Assoc., Inc. v. Monona Shores, Inc.,* 47 Wis.2d 171, 177 N.W.2d 340, 347[8] (1970); *Taylor v. Crocker-Citizens National Bank,* 258 Cal.App.2d 682, 65 Cal.Rptr. 771, 775[4] (1968); *Pierpont v. Hydro Manufacturing Co., Inc.,* 22 Ariz.App. 252, 526 P.2d 776, 778[4] (1974); *In re Miller's Estate,* 189 Or. 246, 218 P.2d 966, 967[2] (1950); 10 C.J.S. Bills and Notes § 7, p. 414. Many extensions of credit to corporations and other borrowers are made without execution of a note by the debtor.[5]

Essentially the instant contention of defendant is that the loan is uncollectible by reason of the statute of frauds, § 432.-010. The statute of frauds is an affirmative defense, Rule 55.08, and it was not pleaded. Even if it had been pleaded defendant would not have derived benefit.

The statute of frauds is inapplicable to the instant loan for the reason that the defendant corporation was itself the borrower. "[I]f the promise or agreement is an original and independent undertaking— i. e., one by which the promisor makes or creates a primary and direct debt or obligation of his own—it is not within the purview of the statute and need not be evidenced by a writing or memorandum signed by the promisor." *Wahl v. Cunningham,* 320 Mo. 57, 6 S.W.2d 576, 581 (banc 1928). To similar effect see *Shufeldt v. Smith,* 139 Mo. 367, 40 S.W. 887, 889 (1897); *Walker v. Whitten,* 38 S.W.2d 480, 482[3–6] (Mo.App. 1931); *Platte Valley Drainage Dist. v. National Surety Co.,* 221 Mo.App. 898, 295 S.W. 1083, 1089[17] (1926); 72 Am.Jur.2d 720 Stat. of Frauds § 191. Of course it is also true that the statute of frauds has no application where there has been a full performance of an oral agreement by one of the contracting parties. *Trimmer v. Short,* 492 S.W.2d 179, 183[1] (Mo.App.1973).

The judgment is affirmed.

MAUS, GREENE and PREWITT, JJ., and HOUSER, Senior Judge, concur.

---

5. For the effect of a note, when one *is* given, on the underlying obligation see § 400.3–802.